Dennis KELSO, Alaska Department of
Environmental Conservation, Ap-
pellant and Cross–Appellee,

v.

Stanley C. RYBACHEK and Rosalie
A. Rybachek, Appellees and
Cross–Appellants.

Nos. S–5942/5982.

Supreme Court of Alaska.

March 8, 1996.

Jacqueline F. Colson, Assistant Attorney General, Fairbanks, Bruce M. Botelho, Attorney General, Juneau, for Appellant and Cross–Appellee.

Stanley C. Rybachek and Rosalie A. Rybachek, pro se, North Pole.

James S. Burling, Pacific Legal Foundation, Sacramento, CA, for Amicus Curiae Livengood–Tolovana Mining District.

Before RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## *OPINION*

MATTHEWS, Justice.

### I. *INTRODUCTION*

This case concerns a request by a group of miners in the Livengood/Tolovana Mining District that the Alaska Department of Environmental Conservation (Department) downgrade water use classifications in the Mining District. The Department denied the request and the Mining District appealed. The superior court remanded the case to the Department and ordered the Department to conduct a use attainability analysis. The Department did so, and downgraded some of the requested waterways. Two affected miners appealed to the superior court. The superior court again remanded for the collection of more data, but otherwise upheld the agency's decision. Insofar as the superior court remanded to the agency for further action we REVERSE. The superior court's decision is otherwise AFFIRMED.

### II. *FACTS AND PROCEEDINGS*

On January 31, 1983, the Livengood/Tolovana Mining District (Miners) petitioned the Alaska Department of Environmental Conservation to reclassify certain streams to exclude all water quality uses except industrial. Reclassification would have had the effect of lowering the classification standards pertaining to the streams. After a public hearing, the Department denied the Miners' petition on the basis that there was substantial sub-

sistence and recreational use made of the Tolovana River, and that the river was also an important fish habitat. Subsequently, the federal Environmental Protection Agency (EPA) revised its water quality regulations, adding a requirement that the states must perform a use attainability analysis (UAA) before reclassifying waters to eliminate designated uses. *See* 40 C.F.R. § 131 effective November 8, 1983.

Meanwhile, the Miners appealed the Department's denial of the reclassification petition to the superior court. On October 21, 1985, the court issued its decision, ruling that in light of the new federal regulation, "prior to any reclassification the State must conduct a [UAA] and must have appropriate regulations for the conducting of such analysis," and that the State could not "deny a reclassification on the basis they have not complied with Federal law or have not implemented State regulations in order that they are able to comply." The court ordered the Department to promulgate appropriate regulations pertaining to UAAs; to conduct a UAA on the waters the Miners had requested to be reclassified pursuant to the new regulations; and to hold a hearing on the petition for reclassification. The court did not rule on the other points raised by the Miners, declaring them to be moot. Neither party appealed from the superior court's decision.

On March 8, 1986, the Department issued a notice soliciting public comment on the proposed changes to the regulations which had been required by the court. After considering the written and oral comments, the commissioner of the Department signed an "order adopting, amending and repealing regulations of the Department of Environmental Conservation" on October 29, 1986; the Lieutenant Governor filed the regulations on December 8, 1986.

The revised procedural regulations required the Department to conduct at least one hearing and to comply with federal reclassification regulations before proceeding with reclassification of state waters. 18 AAC 70.055. The federal regulations allow a state to eliminate a designated use only if the state can demonstrate through a UAA that the use is not presently existing and that certain conditions prevent the attainment of that use. 40 C.F.R. § 131.10. Because all fresh waters in Alaska are classified for all water supply, water recreation, and fish and wildlife uses unless otherwise specified in 18 AAC 70.050(b), any change in the water quality classification of a given body of water is necessarily a change to 18 AAC 70.050(b).

In response to the court order of October 21, 1985, the Department compiled a UAA comprised of field surveys, water quality analyses, habitat observation, and biological surveys on seventeen stream segments. Based on the data accumulated, the Department determined which streams had "existing" and "attainable" uses requiring more stringent controls than the industrial classification.

The Department found that for three streams, attainability was indeterminate because of a lack of information establishing whether the streams' flows were intermittent. Where the agency found suitable fish habitat but did not observe fish during sampling, fish use was deemed attainable unless there was a specific factor that rendered the stream unsuitable for fish use.

Pursuant to the third part of the court order, the commissioner issued a public notice regarding the proposed reclassifications. The notice also announced public hearings which were held in Anchorage, Fairbanks and Minto.

Based on the UAA and the comments received, the Department reached final conclusions on the Miners' request for reclassification of the streams, and submitted its proposed regulations to the Department of Law. The Department of Law made further changes and filed the final revised use classifications with the Lieutenant Governor's office. The amended use classifications became effective on November 30, 1989. On January 9, 1990, the Department transmitted its final decision on the petition for reclassification, along with copies of the final regulations, responses to comments, and a summary of the changes made after public comments to the parties who had commented on the reclassification action.

Stanley and Rosalie Rybachek, residents of Livengood who have resided on patented mining property since 1961, appealed the Department's January 9, 1990 decision insofar as it partially denied the petition to reclassify certain streams. The Rybacheks also challenged the validity of the Department's reclassification regulation. On July 16, 1993, the superior court issued a memorandum opinion and order which in part affirmed the Department's reclassification decision and in part remanded the decision to the Department. The court found that the Department had adopted the reclassification regulation in compliance with the 1985 order, in accordance with proper procedures, and within the scope of its authority, and that the regulation was not arbitrary.

The court questioned, however, the Department's approach to maintaining designated uses where study results were inconclusive, characterizing this as a "restrictive inference." The court seemed troubled by the fact that the Department could fail to collect certain data, and then refuse to reclassify a water supply based on the lack of that data. The court observed that the Department had "absolute discretion 1) to decide whether to consider a reassignation; 2) to define the parameters of the UAA; 3) to carry out the UAA design; and 4) to decide whether to redesignate a use." Noting that the Department "holds all the cards," the court held that the Department's actions were to be scrutinized under a "higher standard." While otherwise affirming the Department's decision, the court remanded to the Department the following question and instruction: "(1) In which situations did the agency apply the restrictive inference; [and] (2) If application of such a restrictive inference is due to a lack of data that is required by the UAA, then the agency has the obligation to produce the data."

The State has appealed the order of remand. The Rybacheks cross-appealed, asserting that the superior court erred in finding (1) that the Department had promulgated a proper reclassification regulation; and (2) that certain waters were appropriately not reclassified.

1. 33 U.S.C. § 1251.

## III. STANDARD OF REVIEW

■ The standard of review which should be employed in this case is that applicable to review of administrative regulations. This court has applied the "reasonable and not arbitrary" standard to agency rule making decisions pertaining to the adoption of regulations. *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971).

## IV. DISCUSSION

■ At the outset we note that the superior court's decision is not a final decision from which an appeal of right can be maintained since it remands the case to the Department for further action. *City & Borough of Juneau v. Thibodeau,* 595 P.2d 626, 631 (Alaska 1979). However, we have considered the appeal and the cross-appeal as petitions for review and made a discretionary decision to grant the petitions.

Although this case is part of a controversy that has been going on for over a dozen years and is procedurally somewhat complicated, the legal questions presented are easily resolved. Concerning the State's appeal, the question is whether the superior court erred in imposing on the Department an obligation to provide data in support of the Department's decision not to downgrade state waters. We conclude that the court did err.

■ Under both state and federal law the State has discretion in choosing whether to proceed with a reclassification request. 18 AAC 70.055(b); 40 C.F.R. § 131.10(g). If a state designates uses which include those specified in section 101(a)(2) of the Clean Water Act[1] (water recreation, fish, shellfish and wildlife) it need not conduct a UAA. 40 C.F.R. § 131.10(k).

■ The Clean Water Act requirement to perform a UAA, therefore, arises exclusively from a state's choice to submit to the EPA a use designation that does not include a use specified in section 101(a)(2) of the Clean Water Act. It follows that a state need not

present any evidence in support of a decision not to downgrade a water body by eliminating certain designated uses.

In addition to discretion over whether to proceed with a reclassification request, the Department has discretion to determine the extent and scope of any UAA that it decides to perform, as long as it complies with 40 C.F.R. § 131 and other applicable state and federal statutes and regulations. 18 AAC 70.055. The State's discretion in conducting reclassifications is limited by EPA oversight. In the present case, the EPA agreed that the Department should maintain designated uses in cases where unequivocal decisions regarding attainability of uses could not be made due to lack of data.

■ The state reclassification regulation provides that, in decisions regarding reclassification of state water, the Department will use information obtained at public hearings and other sources that it considers appropriate. 18 AAC 70.055(a). The statute which prescribes the hearing procedure for agency action on such petitions states that the agency "shall consider all relevant matter presented to it before adopting, amending, or repealing a regulation." AS 44.62.210. However, neither the statute allowing petitions for regulatory revision nor the reclassification regulation imposes a burden on the State to generate information in support of a decision to maintain designated uses.

■ Thus the Department acted reasonably in denying the reclassification petition. The UAA compiled by the Department demonstrates that it considered each of the factors deemed relevant under 18 AAC 70.055 and 40 C.F.R. § 131.10(g) in reaching its reclassification decisions. The Department relied upon chemical, biological, and physical characteristics for each stream segment in addition to information obtained at the public

hearings to determine existing and attainable uses.[2] The Department is not obligated by state or federal law to support its decision not to downgrade water uses so long as the decision is reasonable and not arbitrary.

The Rybacheks' first contention is that the Department's reclassification regulation, 18 AAC 70.055, is not a "real regulation" because it "sets not meaningful standards" and "leaves everything to the 'discretion' of the administrator."

■ We view this contention as raising the question whether the reclassification regulation is valid. In answering this question, we accord the regulation a presumption of validity: the challenger to the regulation has the burden of demonstrating invalidity. *State, Dep't of Revenue v. Cosio*, 858 P.2d 621, 624 (Alaska 1993). In order to be valid a regulation must be consistent with the authorizing legislation and be reasonable and not arbitrary. *Id.* Further, we do not "substitute our judgment for that of the agency with respect to the efficacy of the regulation nor review the 'wisdom' of a particular regulation." *Id.*

Under the appropriate statutory sections, the State has broad discretion in developing water quality regulations. The legislature has empowered the Department to "adopt regulations ... providing for control, prevention, and abatement of air, water, or land or subsurface land pollution...." AS 46.03.020(10)(A). The Department may "adopt standards ... and determine what qualities and properties of water indicate a polluted condition" that may be harmful to humans or animals or "to the use of waters for domestic, commercial, industrial, agricultural, recreational or other reasonable purposes." AS 46.03.070. The Department may establish water quality standards, may establish classes of waters based on quality, and

---

2. The Department concluded that where a stream segment was otherwise capable of supporting fish, the fish and wildlife use would be retained even if the agency found no fish on the particular days that it sampled the stream segment. This seems reasonably in accord with state and federal policies against downgrading uses. On streams that had possible but undocumented intermittent flows, the agency maintained the uses.

In support of the Department's method of analysis, the EPA agreed that the agency must not delete uses in situations where unequivocal data were not available. The EPA stated that the Department could not rely on intermittent flows alone to justify deleting uses, and that the fish and wildlife uses included wildlife other than fish.

may modify those classifications. AS 46.03.080.

 The language of these statutory provisions grants the Department discretion to undertake a wide range of actions related to water quality including promulgating procedural regulations, determining the acceptable levels of pollution allowed in the state's water bodies, and designating classifications of water bodies. 18 AAC 70.055 is in accordance with these purposes.

 The stated intent of the legislature in enacting the above statutory provisions was to "conserve, improve, and protect [the state's] natural resources and environment and control water, land, and air pollution...." AS 46.03.010(a). By promulgating 18 AAC 70.055, the Department complied with the legislative intent. The regulation requires the Department to conduct a public hearing, comply with the EPA's regulation at 40 C.F.R. § 131, and comply with other applicable state and federal law before amending water quality standards.

The applicable federal law is the Clean Water Act (CWA), which requires states to adopt water quality standards and allows for EPA oversight of those standards. 33 U.S.C. § 1313, CWA § 303. *See also* 40 C.F.R. 131.5, 131.20–.21. If a state does not revise its standard in compliance with the CWA, the EPA will promulgate a replacement standard. 33 U.S.C. §§ 303(c)(3)–(4).

Given the EPA oversight, the Department reasonably adopted as Alaska's standard the EPA regulation governing reclassification. It was to be expected that the EPA would consider any regulation incorporating its own reclassification scheme to be in compliance with CWA requirements. Thus we conclude that the regulation is reasonable and not arbitrary.[3]

The Rybacheks also argue that the trial court erred in determining that the Depart-

ment reasonably denied the reclassification request as to certain water bodies. We determine this issue summarily. Our review of the record has convinced us that the Department reasonably based its substantive reclassification decisions on the information it collected and analyzed in accordance with the factors enumerated in applicable federal and state regulations. Thus the superior court did not err when it determined that the State had reasonably denied the reclassification requests as to those streams which the Department declined to reclassify.[4]

## V. CONCLUSION

For the above reasons, the trial court's order of July 15, 1993, is REVERSED insofar as it remands this case to the Department for further action and AFFIRMED in all other respects.

---

**3.** The Rybacheks argue that the State's rationale for deleting the prior reclassification criteria does not appear in the record. However, the Department explained that it was deleting the previous reclassification section because that section only addressed "the presence or absence of a use" and federal regulations required that at-

tainability be considered in addition to whether the use was existing.

**4.** To the extent that the Rybacheks raise or attempt to raise other points in their briefs, these points are inadequately presented and are deemed waived.