**Bernard VESELSKY, Appellant,**

v.

**Patricia VESELSKY, Appellee.**

No. S–11560.

Supreme Court of Alaska.

June 3, 2005.

loan as marital property and the court's unequal division of property and assignment of travel and uncovered medical expenses. Because we conclude that the superior court did not abuse its discretion, we affirm.

## II. FACTS AND PROCEEDINGS

Bernard and Patricia Veselsky were married in 1996 and have three children: a girl born in 1997 and twin boys born in 2000. The parties separated in July 2002, and Bernard filed for divorce in September 2002. Bernard sought shared physical custody of the children; Patricia sought sole physical custody of the children and requested that she be allowed to relocate to Minnesota with the children to pursue her education.

Bernard is a salesman with National Oilwell and earns a gross yearly income of approximately $51,000 and a net yearly income of approximately $38,500. At the time of trial, Patricia earned $50 per hour as a part-time consultant for Hope Community Resources for a net annualized income of approximately $13,000.

Prior to trial, Bernard moved to have Dr. Paul Turner conduct comparative psychological evaluations and a family assessment. Both parties participated in the evaluations. Trial was held before Standing Master David S. Landry in October 2003. Master Landry heard testimony from Bernard, Patricia, and Dr. Turner, among others. Both parties filed written trial briefs and closing arguments. Patricia requested primary physical custody to take the children to Duluth, Minnesota and to live at home with her parents while she pursues a master's degree in social work from the University of Minnesota Duluth. Bernard contended that the parties should share custody if Patricia remained in Alaska and that he should be awarded primary physical custody if Patricia moved to Minnesota.

On May 13, 2004, Master Landry issued his report. He recommended that Patricia be granted primary physical custody of the children and proposed a 55%/45% division of property favoring Patricia. He also recommended that the parties share the cost of visitation equally, and that Bernard pay sev-

Carol A. Brenckle, Kenai, for Appellant.

Peter F. Mysing, Kenai, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Bernard Veselsky appeals the trial court's order of custody and distribution of marital property in his divorce case. He challenges the superior court's decision to allow Patricia Veselsky to retain primary physical custody of their children if she completes her planned move to Minnesota. He also challenges the trial court's classification of Patricia's student

enty-five percent of uncovered medical expenses while Patricia is actively pursuing her degree. Bernard filed objections to the master's report on June 1, 2004, and Patricia filed a response on June 8, 2004. On June 10, 2004, Judge Harold M. Brown approved the master's report with modifications, one of which was to require that Bernard pay seventy-five percent of visitation expenses while Patricia is residing in Minnesota and pursuing her graduate degree on not less than an eighty percent of full-time basis. On July 7, 2004, Judge Brown entered a decree of divorce and findings of fact and conclusions of law adopting the modified master's report as an order of the court. Bernard appeals.

## III. DISCUSSION

### A. Standard of Review

■ The trial court has broad discretion in child custody decisions.[1] "We set aside a trial court's determination of custody 'only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.'"[2] We will find an abuse of discretion where the trial court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned a disproportionate weight to particular factors while ignoring others."[3]

■ The trial court also exercises broad discretion in the division of marital assets.[4] The determination of what property is marital is reviewed for an abuse of discretion although the classification of some items may present a question of law to which we apply our independent judgment.[5] "The equitable allocation of property is reviewable under an abuse of discretion standard and will not be reversed 'unless it is clearly unjust.'"[6]

### B. The Trial Court Did Not Err in Granting Primary Physical Custody of the Children to Patricia Should She Move to Minnesota.

■ Bernard challenges the superior court's decision to allow Patricia to retain primary physical custody of the children if she completes her planned move to Minnesota. We have held that "a court making a custody determination in cases where one parent chooses to move away from Alaska must do so by determining what custody arrangement is in the best interests of the child[ren] under the criteria stated in AS 25.24.150(c), including determining whether there are legitimate reasons for the move."[7] The trial court must assume that the move will take place[8] and then consider the following statutory factors to determine the custody arrangement that serves the best interests of the children:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

1. *Jenkins v. Handel,* 10 P.3d 586, 589 (Alaska 2000).

2. *Moeller–Prokosch v. Prokosch (Moeller–Prokosch III),* 99 P.3d 531, 534 (Alaska 2004) (quoting *Hamilton v. Hamilton,* 42 P.3d 1107, 1111 (Alaska 2002)).

3. *Hamilton,* 42 P.3d at 1111.

4. *Cox v. Cox,* 882 P.2d 909, 913 (Alaska 1994).

5. *Id.*

6. *Id.* (quoting *Doyle v. Doyle,* 815 P.2d 366, 368 (Alaska 1991)).

7. *Moeller–Prokosch v. Prokosch (Moeller–Prokosch I),* 27 P.3d 314, 316 (Alaska 2001).

8. *See id.* at 316–17.

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.[9]

Bernard challenges the superior court's findings with respect to factors (1), (2), (5), (6), (7), and (8). Bernard also argues that the superior court failed to consider the impact of the proposed move on the children and that the court erred in finding that Patricia's reasons for moving were legitimate.

### 1. Patricia's proposed move to Minnesota

█ Bernard argues that the superior court erred in finding that Patricia's reasons for moving to Minnesota were legitimate and that the court failed to consider the effect of the move on the children.[10]

█ We have held that "a proposed move is legitimate if it was not primarily motivated by a desire to make visitation ... more difficult."[11] The superior court found that Patricia's reasons for the move were legitimate ones related to the nature of the graduate program at the University of Minnesota and the availability of family support while she returned to school. This finding is supported in the record. Patricia testified that she is particularly interested in Native American issues and that the University of Minnesota has one of the only social work programs in the country whose core curriculum includes courses focusing on this subject. By contrast, the director of the School of Social Work at the University of Alaska Anchorage testified that her program does not have a concentration in American Indian groups and does not offer many courses related to Alaska Native studies. Patricia also testified that if she moved to Minnesota her extended family would help care for the children when she is in class and that she would be able to live at her parents' house without paying rent, thereby freeing her from the necessity of getting a job and permitting her to spend more time with the children. We have previously accepted the intent to attend graduate school out of state and the desire to be closer to extended family as legitimate reasons for a move.[12]

Bernard contends that Patricia's desire to move despite his offer to provide financial assistance for day care if Patricia were to pursue her degree at the University of Anchorage indicates that the move is intended to frustrate his visitation with the children. But this argument ignores the academic advantages of the Minnesota program and the legitimate benefits of having extended family nearby. Bernard also argues that Patricia's statements that she would not move to Minnesota if it meant giving up custody of the children suggests illegitimate motives for the move. But it is perfectly reasonable for a devoted parent to condition his or her move plans on maintaining custody of the children; we explicitly recognized this possibility in *Moeller–Prokosch I*.[13] The superior court did not clearly err in finding that Patricia's reasons for moving to Minnesota are legitimate.

Bernard also argues that the superior court failed to consider the impact of the proposed move on the children. He appears to argue that the court should have concluded that the proposed move was not in the best interests of the children, pointing to Dr. Turner's testimony that it would be preferable for the children to have regular and consistent involvement with both parents. But under our reasoning in *Moeller–Prokosch I*, the proper inquiry is not whether the move itself is in the best interests of the children, but what custody arrangement is in their best interests assuming the move will

---

9. AS 25.24.150(c).

10. Because the superior court adopted the modified master's report as an order of the court, we refer to these findings as those of the superior court.

11. *Moeller–Prokosch I*, 27 P.3d at 316 (internal quotations omitted).

12. *See House v. House*, 779 P.2d 1204, 1208 (Alaska 1989) (move to permit new spouse to attend graduate program in psychology legitimate reason for move); *Vachon v. Pugliese*, 931 P.2d 371, 379 (Alaska 1996) (desire to be near extended family is sufficient reason to justify relocation).

13. *Moeller–Prokosch I*, 27 P.3d at 316.

take place.[14]   The superior court properly assumed that the move would take place and considered whether the children would be better off moving with Patricia to Minnesota or staying in Alaska with Bernard.   The court recognized that the move "will certainly have an impact on the children's relationship with the Father," but determined, based in part on Dr. Turner's expert testimony, that granting primary custody to Patricia was in the children's best interests.

Bernard points out that the superior court's statement that he has strong family ties to the Duluth area because he has family within one hundred miles is incorrect.[15]   This error is harmless.   In making its custody determination, the court did not assume that Bernard would move to Minnesota; the court determined that Patricia should have custody despite the negative effects of separating the children from their father.   It is highly improbable that the superior court would have assessed the impact of the move differently but for this factual error.

### 2.   The capability and desire of each parent to meet the children's needs

■   The superior court found that both parents are capable of meeting the physical, emotional, mental, religious, and social needs of children, but that "the Mother is slightly more capable than the Father in meeting these needs."   Bernard challenges this finding.

The evidence at trial supports the superior court's finding.   Dr. Turner's evaluation indicated that although both Patricia and Bernard are good parents, Patricia has "better than average parenting abilities" while Bernard has "low average to average capability to care for and parent his children." [16]   Dr. Turner testified that Patricia is better able to

meet the children's needs than Bernard.   In particular, Dr. Turner noted that Bernard did not seem to appreciate that the twins have special needs related to their speech deficits.   By contrast, Dr. Turner found that Patricia had a good understanding of the children's needs and that her experience working with developmentally challenged people was "a clear strength" in addressing those needs.   Dr. Turner also expressed concern that Bernard might at times put his own needs before those of the children.

Bernard argues that he is better able to meet the children's needs because he is more active in their religious education.   His principal complaint is that Patricia rarely permits him to take the children to church on the weekends when she has custody.   But testimony indicated that Patricia has taken their daughter to catechism class when she has custody, has enrolled the children in a religious education program, prays with them at home, and attends church occasionally.   In any event, under AS 25.24.150(c)(1), no single factor is dispositive; the trial court is to consider the "physical, emotional, mental, religious, and social needs of the child[ren]."   In light of the expert testimony that Patricia is better able to meet the children's needs, the superior court was entitled to find that this factor favored the mother despite testimony that the father may play a more active role in the children's religious development.

Bernard also contends that Patricia has an obsessive and controlling personality and that her behavior will "negatively impact the children emotionally and mentally."   But Dr. Turner testified that he disagreed with Bernard's assessment of Patricia as a controlling individual and did not see any evidence of controlling behavior in her interaction with the children.   Nothing in Bernard's testimony about Patricia's personality suggests that

---

**14.** *Id.* at 316–317; *see also Moeller–Prokosch v. Prokosch (Moeller–Prokosch II)*, 53 P.3d 152, 156 (Alaska 2002).

**15.** Bernard testified that his company has an office in Mount Pleasant, Michigan, which is "about 140 miles" from his family.   In his objections to the master's report, Bernard stated that both Mt. Pleasant, Michigan and his birthplace of Flint, Michigan are over 500 miles from Duluth.

**16.** Bernard contends that Dr. Turner is biased against him.   We have held that the trial court, not this court, is in the best position to judge witnesses' credibility and evaluate their testimony.   *See Evans v. Evans*, 869 P.2d 478, 481 (Alaska 1994).

the superior court's finding is clearly erroneous.

Finally, Bernard argues that he is better able to meet the children's needs because Patricia's insistence on caring for the children while Bernard was working during Bernard's summer visitation period harmed the children. During Bernard's period of summer visitation, Patricia regularly picked up and dropped off the children several times in the course of the day. Dr. Turner did testify that these frequent transitions had a negative effect on the children, causing what he called "transition regressions." But Dr. Turner also testified that he believed that Patricia had only the best of intentions, that she was not trying to sabotage the children's relationship with Bernard, and that if a mental health professional had provided a recommended visitation schedule she would have followed it. Most importantly, even considering Patricia's behavior during Bernard's summer visitation period, Dr. Turner concluded that Patricia was better able to meet the children's needs. The superior court did not clearly err in finding that this factor slightly favored Patricia.

### 3. Stability and continuity

In considering the length of time the children have lived in a stable, satisfactory environment and the desirability of maintaining continuity under AS 25.24.150(c)(5), the superior court concluded that this factor favored the mother because the children had resided with her since the separation. But the court gave limited weight to this factor because "the ultimate environment for the children may be dramatically different" in Minnesota. Bernard argues that the court should have given greater weight to the importance of maintaining continuity in Bernard's regular visitation with the children.

We have recognized that "[s]tability is often a function of parental attitude and not of geography."[17] Courts should consider "social and emotional factors such as who the

**17.** *McQuade v. McQuade,* 901 P.2d 421, 426 (Alaska 1995) (quoting *Craig v. McBride,* 639 P.2d 303, 308 (Alaska 1982) (Rabinowitz, C.J., concurring)).

primary care-giver was for the child"[18] and "may properly award primary custody to the relocating parent when that parent offers superior emotional stability."[19] Dr. Turner testified that Patricia has served as the primary caregiver and therefore that the children would experience a greater negative impact if they remained in Alaska with their father rather than accompanying their mother to Minnesota. Moreover, Dr. Turner noted that the children had visited Duluth several times before and had extended family there, while they had few family members in Alaska and were too young to have established social ties in Alaska. The evidence in the record supports the trial court's conclusion regarding this factor.

### 4. The willingness and ability of each parent to encourage a close relationship with the other parent

In considering the willingness and ability of each parent to encourage a close relationship with the other parent under AS 25.24.150(c)(6), the superior court concluded that this factor slightly favors the mother. The court noted that "there is some continuing animosity between the parties," and found that while Patricia "appears better suited to put aside her own emotions and put the children first," Bernard's anger and unresolved marriage issues may make it more difficult for him to do so. Bernard disputes this finding.

Bernard points to Dr. Turner's statements in his report that Patricia "is apprehensive about [Bernard's] participation with the children" and that she was "not responsive to questions about supporting a relationship between the children and their father." But Dr. Turner testified that "overall ... [Patricia] does support the importance of [Bernard] being involved in the children's lives." Dr. Turner also testified that Bernard's anger, mistrust, and unresolved issues related to the marriage interfere with his ability to support a relationship between Patricia and the children, and concluded that Patricia "has

**18.** *Rooney v. Rooney,* 914 P.2d 212, 217 (Alaska 1996).

**19.** *Meier v. Cloud,* 34 P.3d 1274, 1279 (Alaska 2001).

a little bit better capability to support a relationship" between the children and their father. Although there is some contrary evidence in the record, there is substantial evidence in the record to support the superior court's finding that Patricia is more able than Bernard to foster a relationship between the children and the other parent.

### 5.  Evidence of domestic violence

■■■ With respect to this factor, the superior court stated:

> There have been documented instances of domestic violence between the parents. The biggest concern are those instances reported by the Father to his counselor, that involved a variety of physical assaults committed by him against the Mother. This factor does favor the Mother. However, the Father's involvement in individual counseling to address some of his anger issues is a positive. It therefore reduces the weight the court will afford to this factor[.]

Bernard contends that the court should not have found that this factor favors Patricia because Patricia herself allegedly engaged in domestic violence. Bernard testified that Patricia threw small objects at him such as small toys and magazines, and twice hit him with more dangerous objects (a hard-cover book and a cutting board). By contrast, Bernard testified at trial that he "slapped" and "hit [Patricia] on top of the head" and his counselor testified that he had admitted to physically abusing Patricia on multiple occasions. The superior court was entitled to find that this factor favored Patricia because Bernard's assaults were "the biggest concern" with regard to this factor.

### 6.  Evidence of substance abuse that directly affects the emotional or physical well-being of the child

■■■ The superior court found that substance abuse was not a factor affecting the children in either household. Bernard contests this finding, arguing that Patricia abuses alcohol and drugs. Dr. Turner testified that although both parents have used alcohol and marijuana in the past, he believed that it is not an issue affecting the well-being of the children. The superior court's finding is therefore supported by evidence in the record.

We conclude that the trial court did not err in its custody determination.

### C.  Property Division

#### 1.  The trial court did not err in including Patricia's student loan debt as marital property.

■■■ Bernard argues that the superior court erred when it included Patricia's student loan as a marital debt in the division of property. We have held that there is a presumption that debts incurred during the marriage are to be treated as marital: "Absent any showing that the parties intended a debt to be separate, the trial court must presume that a debt incurred during the marriage is marital and should consider it when dividing the marital estate." [20] Bernard concedes that the loan was obtained during the marriage. Because Bernard cites no trial evidence showing that the parties intended the debt to be separate, the student loan was properly considered marital property.

#### 2.  The trial court did not err in awarding Patricia a larger share of the marital property.

■■■ The superior court ordered a property award of $36,876.40 to Patricia and $30,171.60 to Bernard, a 55%/45% division of marital assets. Thus, Patricia received approximately $3,352 more than a fifty percent share of the marital property. The court stated that this unequal distribution reflected the income disparity that will exist between the parties while Patricia is unemployed and pursuing her master's degree. In making this determination, the court also noted that Patricia's "future prospects, based upon her completing all degree requirements, remain[ ] relatively high."

---

**20.** *Coffland v. Coffland,* 4 P.3d 317, 321–22 (Alaska 2000). Student loans can be treated as marital property. *See, e.g., McDougall v. Lumpkin,* 11 P.3d 990, 994 (Alaska 2000).

Bernard contends that the court should have divided the property equally. At the time of the trial, Patricia worked part-time as a social worker for $50 per hour; her annualized net income was about $13,000. But there was also evidence in the record that Patricia had the qualifications for a job paying approximately $52,000 annually, roughly the same as Bernard's current gross income of approximately $51,000. Bernard argues that Patricia's earning capacity is actually greater than his, and that he should not have to finance Patricia's decision to return to school. Patricia responds that the unequal distribution was correct because her actual income in the year of the trial was significantly less than Bernard's and because her income potential will be much lower than Bernard's while she is in school.

■ "Although an equal division of property is presumed to be the most equitable, the trial court has broad discretion to deviate from absolute equality." [21] Alaska Statute 25.24.160(a)(4) lists factors to be considered by the trial court in fashioning a property division. These factors include, among others, the earning capacity of the parties, the "financial condition" of the parties, and the "circumstances and necessities" of each party. [22] We conclude that it was not clearly unjust for the trial court to award Patricia approximately $3,352 more than a fifty percent share of the marital property based on Patricia's circumstances as an unemployed

graduate student despite her full-time earning capacity. [23]

### D. Travel and Medical Expenses

■ Bernard argues that the court erred when it ordered him to be responsible for seventy-five percent of the costs of visitation and the children's uncovered medical expenses while Patricia is actively pursuing her master's degree. Alaska Civil Rule 90.3(d)(2) provides that the court shall allocate uncovered health care expenses equally "unless the court orders otherwise for good cause." The fact that Patricia's financial resources are limited while she is enrolled as a student constitutes good cause for ordering Bernard to pay a greater share of these expenses. Rule 90.3(g) provides that the court "shall allocate reasonable travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute." Given that Patricia's resources will be limited while she is in school and the costs associated with visitation are likely to be substantial, it was just and proper to assign a greater share of the costs to Bernard. [24]

### IV. CONCLUSION

The superior court's order regarding custody and the division of property is hereby AFFIRMED.

---

**21.** *Ulsher v. Ulsher,* 867 P.2d 819, 822 (Alaska 1994).

**22.** *See* AS 25.24.160(a)(4).

**23.** Bernard relies on a line of cases in which we have refused to modify a child support obligation because of the non-custodial parent's voluntary and unreasonable underemployment. In *Olmstead v. Ziegler,* for example, we affirmed the trial court's refusal to modify child support where the non-custodial parent stopped practicing law and returned to school to become a teacher. 42 P.3d 1102, 1105–06 (Alaska 2002). But even if the voluntary underemployment doctrine applies in the property division context, this doctrine actually *undermines* rather than *supports* Bernard's position. We noted in *Olmstead* that the commentary to Civil Rule 90.3 provides that "[w]hen a parent makes a career change, [the trial court's] consideration should include the extent to which the children will ultimately benefit from

the change." *Id.* at 1106; Alaska Civil Rule 90.3 cmt. pt. III.C. We upheld the trial court's refusal to modify child support because "Olmstead has failed to prove any benefit to the child from his decision to downsize his practice and change careers . . . ." *Id.* Unlike the facts in *Olmstead,* Patricia's graduate degree will ultimately benefit the children because it will increase her marketability and future prospects, and therefore would not be classified as voluntary underemployment under this line of cases.

**24.** Because Bernard does not discuss in his briefs his grounds for challenging the terms of the visitation order, we deem this issue waived. *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (point given only cursory statement in the argument portion of brief is deemed waived).