Clifton T. TILLMON, Appellant,

v.

Susan L. TILLMON, Appellee.

No. S–12685.

Supreme Court of Alaska.

July 25, 2008.

**1023**

Clifton T. Tillmon, pro se, Anchorage.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Clifton Tillmon appeals from October 2006 divorce orders granting Susan Tillmon primary physical custody of the Tillmons' four children, ordering Clifton to pay Susan monthly child support, and awarding Susan sixty percent of the marital estate (including fifty percent of the marital portion of Clifton's military retirement). We conclude that the trial court did not abuse its discretion in awarding primary physical custody of the children to Susan or in dividing the marital estate. But Clifton was entitled to two specific deductions from income for the calculation of his monthly child support obligation, and because we cannot discern from the record if or when those deductions were taken into account, we remand and direct the court to ensure that they were.

Clifton also argues that a child support modification made effective May 1, 2007, should have been retroactive to when the Tillmons' oldest daughter came to live with him in late September 2006. The applicable rule is that a modified support order can be retroactive only as early as the service date for the modification motion, but a trial court may exercise its discretion to select a later

effective date if it finds good cause to do so. Because we cannot discern from the record whether the court had good cause to make the new support order effective May 1, 2007, instead of the modification motion date of November 2, 2006, we remand for further consideration.

## II. FACTS AND PROCEEDINGS

Clifton and Susan married in May 1993. They separated in December 2005 and Clifton filed for divorce in March 2006. Clifton and Susan have four children currently ranging in age from five to sixteen.

A June 2006 interim custody order and visitation schedule from the trial court gave Susan the greater share of physical custody of the children prior to the parties' August 2006 trial. In mid-June 2006 the State of Alaska Child Support Services Division (CSSD) set Clifton's support obligation at $1,713 per month effective February 1, 2006. Clifton administratively appealed the CSSD determination but agreed to delay the appeal pending completion of the divorce proceedings.

At trial the parties were able to resolve most custody and visitation issues. One of the "sticking points" was whether, after weekend visitation with the children during the school year, Clifton would return the children to Susan on Sunday nights, as Susan wanted, or take them to school on Monday mornings, as he wanted. Another was Susan's request that Clifton be required to pay half of Susan's work-related daycare costs for the three youngest children in addition to child support.

On August 8, 2006, the trial court rendered oral rulings which later were followed by written findings of fact and conclusions of law. The court followed the parties' agreement to divide the marital portion of Clifton's military retirement fifty-fifty, but the marital estate as a whole was divided sixty-forty in Susan's favor in light of the parties' disparate incomes. The court determined that it was in the children's best interests for the parties to share legal custody and for Susan to have primary physical custody, but granted Clifton visitation two of every three weekends during the school year and some variation of alternate weeks during the summer. With respect to the sticking points, the court ruled in Susan's favor: (1) Clifton's weekend visits with the children during the school year were to end Sunday nights rather than Monday mornings; and (2) Clifton was to pay for half of Susan's daycare costs in addition to child support because "daycare costs are a cost of having children and ... the parents have an obligation to share them, and it ought to be fifty-fifty." The court directed Susan to prepare appropriate orders.

The Qualified Domestic Relations Order (QDRO) proposed by Susan provided that she would "be entitled to a percentage of [Clifton's] disposable military retired pay defined as 151 months [the marital term] divided by the number of months of [Clifton's] military service times 50%." However, Clifton already had proposed an alternative order intended to limit Susan's share of the retirement to fifty percent of its value as of the date of separation, instead of allowing Susan to benefit from post-divorce pay raises and promotions that would increase the cumulative value of the retirement.

Clifton also objected to Susan's proposed findings and conclusions and child support order, he simultaneously moved for reconsideration of some of the trial court's rulings. Clifton argued that the court should have granted a shared custody arrangement instead of granting Susan primary custody, and should have used the corresponding "shared custody" formula of Alaska Civil Rule 90.3(b) to calculate his child support obligation instead of the Rule 90.3(a) formula for non-custodial parents.[1] To support this

---

1. Alaska Civil Rule 90.3 provides different child support award formulas for different custody arrangements. Where one parent has primary physical custody (as defined by Rule 90.3(f)(2)), the other parent is required to pay child support according to the formula set forth in Rule 90.3(a), which here, because four children are involved, amounts to 36% of Clifton's adjusted annual income. *See* Alaska R. Civ. P. 90.3(a)(2)(C)-(D). Had there been a shared physical custody arrangement (as defined in Civil Rule 90.3(f)(1)), Clifton's support obligation probably would have been reduced by use of a different formula. *See* Alaska R. Civ. P. 90.3(b)(1)(B). Clifton noted that he missed the shared-custody threshold by just two nights; he

argument, Clifton contended that the court failed to make necessary findings when it awarded primary physical custody of the children to Susan instead of awarding "shared custody."[2] He also argued that it was improper for the court to order him to pay one-half of Susan's daycare costs in addition to child support, asserting that these costs fall within the ambit of normal needs and are covered by support payments. Alternatively, he argued that he at least should be entitled to the allowable child care deduction from his income for the calculation of his support obligation.[3] He similarly argued that the court erred in not giving him the allowable deduction for retirement contributions when calculating his support obligation.[4]

On September 25, 2006, Susan moved for an order directing Clifton to explain why he was not paying all of his child support or any of his share of daycare expenses. The next day, Susan had a physical altercation with the Tillmons' oldest daughter, who was removed from Susan's home and delivered to Clifton. On September 29, 2006, Clifton moved for primary custody of all four children.

On October 3, 2006, the trial court issued its written orders from the August divorce trial. The court ordered that Clifton's reconsideration motion be "largely denied," but noted apparent agreement that Clifton's daycare payments should be taken into account when calculating his child support obligation. The court signed the findings and conclusions lodged by Susan, with minor corrections to clarify the sixty-forty division of the marital estate and the fifty-fifty division of the marital portion of Clifton's military retirement. The court also signed the form child support order lodged by Susan, which did not incorporate the child care deduction, and set Clif-

ton's support obligation at $2,038 per month for four children, $1,868 per month for three children, $1,528 per month for two children, and $1,132 per month for one child. The support order was effective June 1, 2006, and the court noted that pre-June child support would be set by CSSD in Clifton's administrative proceeding. Finally, the court signed the QDRO submitted by Susan.

At the conclusion of a hearing in late October 2006 the court orally granted interim custody of the oldest daughter to Clifton. In early November 2006 Clifton filed a motion to modify his child support obligation, making three points about changed circumstances:[5] (1) because one child now resided with him, the Tillmons were in a new and different custody arrangement; (2) Clifton was entitled to the child care deduction from income in the calculation of his support obligation; and (3) Susan's income had materially changed since the August trial. Clifton also lodged a proposed interim order to document the existing custody arrangement for the oldest daughter "pending the final resolution of his [September 29, 2006] custody modification motion," but the trial court later denied Clifton's September 29, 2006 motion to modify custody without comment about the existing interim custody arrangement.

Later in November 2006 the trial court heard Susan's motion regarding Clifton's failure to obey the court's child support order. Clifton conceded that he had not been paying all of his financial obligations under the court's earlier orders. As the court and the parties discussed Clifton's arrearage, it was not in dispute whether Clifton was entitled to the child care deduction from income in the calculation of his child support obligation. Clifton agreed to make payments to Susan, and Susan withdrew her motion.

would have the children 29.45% of the time (107.5 nights), not the 30% (109.5 nights) required for application of the potentially more favorable formula. *Compare* Alaska R. Civ. P. 90.3(f)(1) *with* Alaska R. Civ. P. 90.3(f)(2).

2. *See* AS 25.20.100 (when a request for shared custody is denied, the reasons for the denial shall be stated on the record).

3. *See* Alaska R. Civ. P. 90.3(a)(1)(E); *Duffus v. Duffus,* 72 P.3d 313, 319–20 (Alaska 2003) (actu-

al reasonable child care expense necessary to enable the parents to work should be deducted when calculating parents' incomes for child support purposes).

4. *See* Alaska R. Civ. P. 90.3(a)(1)(B).

5. *Cf.* Alaska R. Civ. P. 90.3(h)(1) (final child support award may be modified upon showing of material change of circumstances).

On December 1, 2006, the administrative law judge for Clifton's CSSD appeal issued a final order setting Clifton's child support for February through May 2006, noting that the trial court's October 3, 2006 support order "mooted this appeal as to child support after [June 1, 2006]."

On December 6, 2006, the trial court signed Clifton's interim custody order for the oldest daughter, even though the court already had denied the September motion to modify custody. In early January 2007 the court directed Clifton to submit a proposed child support order "that [took] into account deductions from gross income of the share of child care expenses paid" by Clifton. The court stated that the support order "should be for 4, 3, 2 and 1 children [sic], and presently administered pursuant to 3 children as [the oldest daughter] is still with [Clifton]." The court also noted that if it granted long-term primary custody of the oldest daughter to Clifton, his support obligation would be recalculated on the basis of hybrid or divided custody.[6]

At a hearing in late March 2007 Susan acknowledged that a "divided custody" arrangement had existed since October 1, 2006. Clifton continued to assert his entitlement to retirement contribution and child care deductions from income in the calculation of his child support obligation. The trial court agreed that these deductions were warranted; it affirmed that the child care payments were "work-related," thus deductible under Rule 90.3, and included a deduction for Clifton's retirement contribution in its summary of the calculations. The court tentatively calculated Clifton's new support obligation and gave the parties time to file objections.

On April 19, 2007, the trial court issued a modification order, awarding long-term primary custody of the oldest daughter to Clifton and reducing Clifton's child support obligation to $1,213.07 per month. The effective date of the modified support order was May 1, 2007.

Clifton appeals. Specifically, he argues that the court erred in originally awarding Susan primary custody of the children; in denying allowable deductions when calculating child support; in failing to timely modify his child support obligation after he assumed custody of the eldest child; in dividing the estate sixty-forty in Susan's favor; and in failing to calculate Susan's share of his military retired pay according to his proposed formula. We address these arguments in turn.

## III. DISCUSSION

### A. Standard of Review

■■■ Trial courts have broad discretion in determining child custody issues.[7] We review custody orders for an abuse of discretion, which occurs "only if based on the record as a whole this court is left with a definite and firm conviction that a mistake has been made."[8] This deferential standard also applies to our review of child support awards[9] and to a trial court's equitable division of marital property in a divorce proceeding.[10] Whether a trial court applied the correct method of calculating child support is a matter of law to which we apply our independent judgment.[11]

### B. Custody Order

■■■ Clifton asserts that the trial court erred by not originally awarding him shared

---

**6.** See Alaska R. Civ. P. 90.3(f)(3) (divided custody exists "if one parent has primary physical custody of one or more children of the relationship and the other parent has primary custody of one ·or more other children of the relationship, and the parents do not share physical custody of any of their children"); Alaska R. Civ. P. 90.3(f)(4) (hybrid custody exists "if at least one parent has primary physical custody of one or more children of the relationship and the parents have shared physical custody of at least one child of the relationship").

**7.** See Carstens v. Carstens, 867 P.2d 805, 807 (Alaska 1994).

**8.** Flannery v. Flannery, 950 P.2d 126, 129 (Alaska 1997) (internal quotations and citation omitted).

**9.** See State, Dep't of Revenue, Child Support Enforcement Div. v. Rios, 938 P.2d 1013, 1015 (Alaska 1997).

**10.** Mellard v. Mellard, 168 P.3d 483, 484–85 (Alaska 2007).

**11.** See Turinsky v. Long, 910 P.2d 590, 594 n. 10 (Alaska 1996).

physical custody of the children. At trial, the parties were in agreement about all custody issues except when weekend visits would end during the school year: Monday morning, as proposed by Clifton, or Sunday evening as preferred by Susan. The distinction between Sunday evenings and Monday mornings seems trivial, but the financial ramifications may be significant. Under Rule 90.3(f)(1), shared physical custody results when a child resides with each parent at least thirty percent of the year, and Clifton's proposed schedule apparently would have enabled him to barely clear that threshold and avail himself of a potential reduction in his child support obligation.[12] But the court instead terminated his visits on Sunday nights, incidentally denying him shared custody for purposes of Rule 90.3(f)(1).

Clifton argues that the trial court failed to adequately justify awarding primary physical custody to Susan as required by AS 25.20.100, which states: "If a parent ... requests shared custody of a child and the court denies the request, the reasons for the denial shall be stated on the record." Susan responds that Clifton's argument would carry more weight if "more [were] involved than the single night of visitation." She asserts that the reason for the court's action is "sufficiently clear"; in addition to it being impractical for Clifton to deliver the children to school on Monday mornings, Clifton "could not interact with sleeping children on Sunday nights," and he "has not pointed out any [statutory factors] that support visitation with the children on Sunday nights."

We defer to the trial court's determination that it was desirable to have the children returned to Susan on Sunday evenings. The record does not support a conclusion that the court abused its discretion: the parties agreed it was in the children's best interests to reside primarily with Susan during the school year, and returning the children to

her on Sunday evenings is consistent with that plan.

It is true that Clifton requested shared physical custody in his trial brief. But the narrow dispute remaining at trial was whether Clifton should return the children to Susan on Sunday nights or to school on Monday mornings, not whether Clifton should have shared physical custody. It is not clear that the trial court was required to take into consideration any broader legal implications of its determination of that dispute. As it was, Clifton waited until his reconsideration motion to characterize his proposed schedule as a "shared physical custody schedule."[13]

### C. Child Support

Clifton disputes three aspects of the trial court's child support orders. First, he argues that the court's original support order was an improper modification of CSSD's earlier order. Second, he argues that the court erred by consistently denying him two allowable deductions from income in the calculation of his original support obligation, namely work-related child care expenses and retirement contributions. Third, he argues that the court failed to modify the support order in a timely manner after primary custody of the oldest daughter was transferred to him. We discuss these three points below.

#### 1. The trial court's original support order did not retroactively modify an existing final child support award.

In mid-June 2006, after Clifton filed for divorce but before the August 2006 trial, CSSD initially set Clifton's child support at $1,713 per month effective February 1, 2006. The trial court made its long-term custody and child support awards at the August 2006 trial; these were later reiterated in its October 3, 2006 written orders. The court's or-

---

**12.** *See supra* note 1.

**13.** Clifton opines that the "court only denied my request for shared custody due [to] its ... bias against me." Clifton does not point to anything specific to support this opinion, and nothing in the record raises a question of bias by the trial court. We remind pro se appellants that judicial bias should not be inferred merely from adverse

rulings, and we reject this putative point of error because (1) Clifton did not raise it below, *see Anchorage Nissan, Inc. v. State*, 941 P.2d 1229, 1239–40 (Alaska 1997); (2) it is not properly briefed and presented, *see Kelso v. Rybachek*, 912 P.2d 536, 541 n. 4 (Alaska 1996); and (3) it has no legitimate basis on the record before us.

der setting Clifton's support obligation at $2,038 per month was effective June 1, 2006.

Clifton points to Civil Rule 90.3(h)(1)-(2) [14] and argues that the trial court wrongfully "retroactively modified an existing administrative order with Alaska CSSD . . . without a material change of circumstances" and that a promotion he received in June 2006 "did not constitute a material change of circumstances because the pay [increase] did not exceed 15%." [15]

Clifton's argument lacks merit. Nothing in the record suggests that CSSD's June 2006 support order was a final child support award. Clifton appealed the initial CSSD determination but then agreed to delay that appeal to allow the trial court to make its own support determination. In his trial brief, Clifton stated that "the court will need to establish a child support order for the interim period and post[-]divorce period."

14. Rule 90.3(h) provides:
 (1) *Material Change of Circumstances.* A final child support award may be modified upon a showing of a material change of circumstances as provided by state law. A material change of circumstances will be presumed if support as calculated under this rule is more than 15 percent greater or less than the outstanding support order . . . .
 (2) *No Retroactive Modification.* Child support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d). A modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Services Division, is served on the opposing party is not considered a retroactive modification.

15. Clifton infers that the trial court based its support order on a paycheck issued after his June 8, 2006 promotion, which presumably reflected income greater than that reflected in the financial statement used for CSSD's earlier determination. This may explain the difference in the support orders as well as Clifton's assertion of error.

16. Even if CSSD's June 2006 support order could be considered a "final child support award" that could be modified only upon a "material change of circumstances," there would be no error. A material change of circumstances is presumed if support calculated under Rule 90.3 would vary by more than fifteen percent because of changed conditions. Alaska R. Civ. P. 90.3(h)(1). CSSD originally calculated Clifton's support obligation at $1,713 per month based on his then-current financial statement, and the trial court calculated Clifton's support obligation at

Moreover, because CSSD's final support award for February through May 2006 was issued after the trial court's award for June 2006 forward, the court's award could not have been a modification of the CSSD award.[16]

## 2. Clifton's original child support obligation should be calculated with allowable deductions.

 Clifton argues that when calculating his original child support obligation, the trial court did not grant him allowable deductions for work-related daycare expenses [17] and involuntary retirement contributions.[18] Susan does not dispute that the deductions are allowable, but asserts that Clifton waived the argument because (1) he did not argue his entitlement to the deductions at trial and therefore cannot argue the point on appeal; [19]

$2,038 per month based on his later payroll information. (Both calculations were made without the claimed deductions for child care expenses and retirement contributions.) The difference exceeds the fifteen percent change threshold ($1,713 × 1.15 = $1,970).

17. At trial and in his reconsideration motion, Clifton argued it was improper for the trial court to order him to pay daycare expenses in addition to his child support payments. Clifton does not pursue this point on appeal and we do not reach it here.

18. Contributions to retirement plans are deductible so long as mandatory and voluntary deductions collectively do not exceed 7.5% of gross income. *See* Alaska R. Civ. P. 90.3(a)(1)(B).

19. The actual dispute at trial was whether the court should order Clifton to pay a portion of Susan's daycare expenses. After the trial court issued its oral decision in Susan's favor, Clifton filed an objection to Susan's proposed findings and conclusions and a contemporaneous motion for reconsideration, raising the alternative argument that he at least should be entitled to the deduction. The trial court agreed about the deduction and Clifton now argues on appeal that it never was implemented. This point is properly before us.

It may be that the retirement contribution deduction was not expressly raised by Clifton during trial, but the payroll deduction for his retirement contribution was reflected in the document relied on by the trial court to calculate Clifton's support obligation and Clifton immediately contested the court's failure to take it into account

and (2) he failed to "insist" that the trial court rule on his September 2006 motion for reconsideration.[20] Susan's arguments lack merit and will not preclude our review of this issue.

It is undisputed that when originally considering Clifton's support obligation, the court did not take into account his ordered daycare payments or his payroll deductions for retirement contributions. It also is undisputed that when responding to Clifton's reconsideration motion on October 3, 2006, the court indicated agreement that at least Clifton's daycare payments should be taken into account. Yet the record does not reveal any contemporaneous change in Clifton's support obligation calculation.

At the November 2006 hearing about Clifton's failure to pay child support and his share of the daycare expenses, the court again indicated that Clifton should be entitled to a deduction for his daycare payments. Yet the record does not reveal what action was to be taken, or if any action was taken, to correct Clifton's support obligation. Because Clifton apparently had not made any daycare payments at all, but at the hearing agreed to do so, it is possible that the court and parties took a correction into account when calculating Clifton's arrearage; but the record does not reflect a change in the continuing support obligation.

At the March 2007 hearing on the change of long-term primary custody of the oldest daughter and the modification of Clifton's child support, the trial court indicated that *both* deductions from income should be allowed in the calculation of Clifton's support obligation. The two deductions presumably were taken into account in the calculation of Clifton's new support obligation effective May 1, 2007, and Clifton makes no argument to the contrary. But it is not clear from the record whether or how the trial court or the parties remedied the incorrect calculation of Clifton's prior support obligation, and Clifton continues to assert that it never was remedied. We are unable to determine from the record whether he is entitled to any relief, and we therefore remand and direct the trial court to ensure that Clifton's original child support obligation was properly calculated.

**3. In the absence of good cause, the modified support order should be effective on the date Clifton's motion for modification was served.**

■ Clifton argues that the court did not timely modify the child support order to reflect a material change of circumstances after Clifton received emergency custody of the Tillmon's oldest daughter in late September 2006.[21] At the March 30, 2007 hearing, the parties recognized that a divided custody arrangement had existed since October 1, 2006. The April 19, 2007 modified support order had no retroactive effect, but rather provided that the first payment of the new

---

when he filed his objections to the proposed findings and conclusions. Clifton thus raised his objection prior to the court's final October 2006 order and his point was preserved for appeal.

**20.** No legal authority is provided to support this proposition; Susan's reliance on *Taylor v. Johnston*, 985 P.2d 460, 466 (Alaska 1999), is misplaced. There, a party insisted on a court action that it later wished to contest. That is not the case here. Moreover, the trial court did rule on the reconsideration motion and, although noting that it was largely denied, did agree that a deduction for daycare expenses should be allowed. Susan further argues that Clifton essentially "invited the error" he now complains of. This argument is inadequately presented and will not be considered. *See Kelso*, 912 P.2d at 541 n. 4.

**21.** Clifton's brief is somewhat difficult to decipher on this point. He asserts that he had primary physical custody of the daughter beginning

September 26, 2006, and he points out that the trial court signed the written order for temporary primary custody on December 6, 2006 (but does not mention the October oral order for interim primary custody). Clifton suggests that the court erred by not (presumably sua sponte) ordering a modification of his child support at least as early as December 6, 2006, but the suggestion is inadequately presented and will not be considered. *See Kelso*, 912 P.2d at 541 n. 4. The point of error regarding the retroactive application of the April 17, 2007 modification order is sufficient to address Clifton's arguments.

In Clifton's original statement of points on appeal, he also alleged that the trial court erred in allowing Susan certain deductions from income in the calculation of her adjusted income for the determination of the divided custody support award. Clifton did not discuss this alleged error in his brief and his argument therefore is waived. *See Kelso*, 912 P.2d at 541 n. 4.

support amount of $1,213.07 would be "due no later than May 1, 2007."

■ Rule 90.3(h)(2) provides that child support obligations generally may not be modified retroactively, but that a modification made effective on the date that a motion for modification is served is not considered retroactive.[22] As we explained in *Boone v. Boone:*

> The rule's text does not express a preference or presumption that a modification become effective on the motion service date, and does not prevent the superior court from exercising its discretion and selecting a later effective date. But we are nonetheless persuaded that the motion service date should be the preferred effective date, and that the superior court should exercise its discretion in selecting a different effective date only if it finds good cause for doing so.[23]

Accordingly, in the absence of good cause to use a different effective date, the April 19, 2007 modified support order should have been effective on the service date of the November modification motion. The court instead chose to make it effective May 1, 2007, but the record does not reveal the court's reasoning.[24] We remand and direct the court to make the modified order effective on the service date of the November modification motion unless the court, in its discretion, chooses a later effective date and states its reasons for doing so.

**22.** For this reason, the Commentary to Rule 90.3 cautions an "obligor parent [to] promptly apply for a modification . . . when a material change in circumstances occurs." Alaska R. Civ. P. 90.3 Commentary X.B. *See supra* note 16.

**23.** *Boone v. Boone,* 960 P.2d 579, 585 (Alaska 1998).

**24.** Clifton opines that his requests for retroactive relief were ignored because the trial court had an "obvious *undisclosed* bias" against him evidenced by "the lower court's abuse of discretion." We again reject Clifton's unsupported suggestion of bias. *See supra* note 13.

**25.** *Veselsky v. Veselsky,* 113 P.3d 629, 637 (Alaska 2005) (quoting *Ulsher v. Ulsher,* 867 P.2d 819, 822 (Alaska 1994)).

## D. Property Division

### 1. The trial court did not abuse its discretion in dividing the marital estate sixty-forty in Susan's favor.

■ Although "an equal division of property is presumed to be the most equitable, the trial court has broad discretion to deviate from absolute equality."[25] Alaska Statute 25.24.160(a)(4) lists several property division factors for the court to take into consideration, among them "the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage,"[26] and "the circumstances and necessities of each party."[27]

Clifton argues that the trial court penalized him in the property division "for earning more yet both parties have the capability to work." Clifton implies that the trial court should have considered Susan's potential income, not her actual income. Although he did not raise this argument below and thus impermissibly raises it here,[28] we note that it probably would have been inappropriate to impute income to Susan. A court can in its discretion impute income where a party is voluntarily and unreasonably "underemployed."[29] Susan doubtless could have made more money if she held several jobs, as Clifton suggests, but given that the four minor children in her primary custody would necessitate significant work-related child care expenses, her decision not to hold several jobs does not seem unreasonable.

**26.** AS 25.24.160(a)(4)(C).

**27.** AS 25.24.160(a)(4)(G).

**28.** *See McMullen v. Bell,* 128 P.3d 186, 190 (Alaska 2006) ("Ordinarily 'this court will not consider an issue raised for the first time on appeal.' The only exception is where the issue is '1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings.' " (quoting *State v. Nw. Constr., Inc.,* 741 P.2d 235, 239 (Alaska 1987))).

**29.** *See Olmstead v. Ziegler,* 42 P.3d 1102, 1105 (Alaska 2002) (applying the voluntary and unreasonable standard in the context of determining child support obligation).

The "biggest and most valuable asset" of the marital estate was Clifton's military retirement benefit, which the court estimated to be worth at least $100,000. The parties already had agreed to split the marital portion of the retirement fifty-fifty and the court reasoned that when an equal division of that asset was taken into account, the division of the relatively insignificant remainder of the marital estate largely in Susan's favor was appropriate given the parties' disparate incomes.

In light of the entire record, we are not left with a definite and firm impression that the trial court made a mistake in dividing the marital estate. The court did not abuse its discretion, and we will not set the property division aside.

**2. The trial court did not abuse its discretion in entering Susan's proposed QDRO.**

[11] As discussed above, the parties agreed to a fifty-fifty split of the marital portion of Clifton's military retirement and this was set forth in Susan's proposed QDRO. Clifton raises two closely related arguments with respect to the court's use of Susan's proposed QDRO to implement the division of his retirement.

First, he argues that the court "ignored evidence presented which would have aided in a fair division of [Clifton's] unvested military retirement," thus allowing Susan to "double-dip" into the retirement. He then argues that by not limiting the marital portion of the retirement to his current pay grade, Susan will wrongfully benefit from his future promotions and pay raises (which will presumably increase the final value of the

retirement and thus her share of it). These arguments appear to be one and the same: Clifton wants to prevent Susan's share of the marital portion of his military retirement pay from increasing in value due to his future pay raises and promotions.[30]

According to the Uniformed Services Former Spouses' Protection Act,[31] Dividing Military Retired Pay ("USFSPA guidelines"), there is no "magic language" necessary to express a percentage award of retired pay; all that is necessary is that the decree state that "[t]he former spouse is awarded ____ percent ... of the member's military retired pay." This was accomplished by the QDRO submitted by Susan and signed by the court stating Susan "shall be entitled to a percentage of [Clifton's] disposable military retired pay defined as 151 months [the length of the Tillmons' marriage] divided by the number of months of [Clifton's] military service times 50%."[32]

The USFSPA guidelines also note that while this "formula award" is sufficient, "many States take the approach that the former spouse should not benefit from any of the member's post-divorce promotions or pay increases based on length of service after the divorce." These guidelines imply that the agency administering the benefit is willing to comply with court orders designed to accommodate this, if clearly expressed by court decree. These guidelines also suggest that one way of achieving an unambiguous result is to grant a "hypothetical award ... based on a retired pay amount different from the member's actual retired pay" that is "figured as if the member had retired on the date of separation or divorce."[33] The result is that the spouse's share of the retirement pay is

---

**30.** Susan argues that having earlier stipulated to a fifty-fifty split of the marital portion of his military retirement, Clifton may not now contest it. But Clifton is not disputing that Susan is entitled to the fifty-percent share; he is asserting that there is more than one method of calculating that share relative to the whole and that the method used by the trial court is unfair.

**31.** *See* 10 U.S.C. § 1401 (2006).

**32.** This is often referred to as the "coverture fraction" method and has been used by Alaska courts for the division of marital portions of

defined benefit plans for some time. *See Faulkner v. Goldfuss*, 46 P.3d 993, 1003 (Alaska 2002).

**33.** The USFSPA guidelines further note:

A proposed regulation was issued in 1995 that allowed the use of formula and hypothetical awards to divide military retired pay when the parties were divorced prior to the member's becoming eligible to receive retired pay. [60 Fed.Reg. 17507 (1995) (as yet to be codified).] Although this proposed regulation has never been finalized, it still provides the basis for our review of these types of awards.

derived exclusively from the value accrued during the marriage.

To achieve what he perceived as a fairer division of his military retirement, Clifton submitted a proposed Qualifying Military Order (QMO) that briefed the trial court on the "hypothetical award" method of determining Susan's interest in the asset. Clifton also submitted several examples of QMOs issued by Alaska trial courts. But the court chose to use Susan's QDRO, applying the more traditional method of division.

The court has wide latitude in fashioning an appropriate property division,[34] and as with the sixty-forty split of the entire marital estate, we are not left with the firm and definite conviction that the court made a mistake by dividing the military retirement asset according to Susan's QDRO instead of Clifton's QMO. The traditional fraction method may provide more certainty in application and enforcement and it would be speculative to assume any material difference to Clifton in the ultimate property division.[35] The court did not abuse its discretion by using the QDRO.

## IV. CONCLUSION

We AFFIRM the trial court's orders awarding Susan initial primary custody of the four children and granting Susan sixty percent of the marital estate, and we AFFIRM the trial court's use of the QDRO proposed by Susan.

We REMAND for further proceedings with direction to the trial court (1) to ensure that its original child support calculations accounted for Clifton's allowable deductions for retirement contributions and daycare expenses; and (2) to either make the modified child support order effective on the date the modification motion was served or to state its reasons for choosing a later effective date.

---

**34.** *See Veselsky,* 113 P.3d at 637.

**35.** While Clifton is correct that Susan's proposed method of division allows her share of his retirement to increase in value as a result of later promotions and pay raises, the marital share of the retirement will continue to decrease as a percentage of the entire retirement as he extends the duration of his service in the military. Clifton did not attempt to show that using the QDRO instead of the QMO would materially affect the sixty-forty division of the marital estate.