Troy R. BURNS, Appellant,

v.

Halya P. BURNS, Appellee.

No. S–12154.

Supreme Court of Alaska.

May 11, 2007.

Christopher E. Zimmerman, McConahy, Zimmerman & Wallace, Fairbanks, for Appellant.

Daniel L. Callahan, Callahan Law Office, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Troy Burns appeals from an order enforcing the settlement agreement between himself and his former wife, Halya Burns. The superior court determined that Troy is required to pay Halya spousal support in the amount of thirty-five percent of his yearly dental income, whether or not he continues to work as a dentist. Troy argues that the superior court incorrectly interpreted the terms of the settlement agreement in a manner contrary to the agreement's plain language, which is an impermissible modification of the settlement agreement. Because the superior court's interpretation of the settlement agreement was correct, we affirm its decision.

## II. FACTS AND PROCEEDINGS

Troy and Halya Burns were married on June 16, 1985. They have two children, ages fifteen and nineteen. Troy is a dentist with a practice in North Pole, while Halya is a homemaker, who at the time of the hearing did not work outside the home. The couple separated in late May or early June of 2004, and Troy filed for divorce in July 2004. On August 31, 2004, Troy and Halya entered into an agreement settling child custody, support, and property issues. The agreement was filed with the court on September 2.

The parties do not dispute the agreement's requirement that Troy pay a fixed sum of $2,500 per month child support for the two children, an amount that was to be reduced to $1,800 per month when the eldest child reached the age of eighteen. Nor do they contest the agreement's requirement that Troy pay eighty percent of the children's uninsured health care expenses, one-half of their college expenses, and all travel expenses involved in visiting Troy. The issue raised in this appeal is the amount of spousal support Troy is to provide to Halya.

Under the settlement agreement, most of the marital property was divided equally among the parties. Troy was allocated the marital residence, business, and commercial properties, and was required to pay Halya a sum of $158,831.68 over seven years to equalize the property division. But a major asset of the marriage, the dentistry practice, was not divided equally. Troy retained the interest in the dental practice and in return was required to pay spousal support to Halya in the amount of thirty-five percent of his previous year's dental salary, reduced by the amount Troy paid as child support for the minor children. The agreement provided that Troy would pay the spousal support until he retired from his dentistry practice, "with a five-year minimum for said payments." The agreement also provided that if Troy elected to sell the dentistry practice within nine years of the execution of the agreement, Halya would receive thirty percent of the proceeds from the sale. The superior court incorporated the child custody, support, and property settlement agreement into the parties' decree of divorce.

In April 2005, about eight months after the divorce was final, Halya filed a motion to enforce the settlement agreement. In this motion she requested that Troy be ordered to (1) provide his 2004 income tax return to calculate the spousal support due in 2005; (2) execute the necessary promissory note and deed of trust to secure the property settlement obligation as provided by the settlement agreement; (3) provide the details of any sale of the dental practice; and (4) provide security for the spousal support obligation "in light of [Troy's] apparent intention to retire from the practice of dentistry." The first three issues were resolved and are not pertinent to this appeal.

In her affidavit in support of the motion to enforce the settlement agreement, Halya explained that when she entered into the agreement, she "certainly assumed that Troy would remain in dentistry as his career." Halya expressed her concern that if Troy were to retire and apply to medical school (as he apparently plans) he would make very little money and the spousal support would be sharply reduced. In her affidavit, Halya explained that the only reason she agreed to a fifty-fifty division of the other marital property was her anticipated receipt of spousal support based on a percentage of Troy's dental income for at least five years. Thus, Halya argues, Troy's retirement from his practice "strikes at the heart of the ... agreement and may be grounds to set aside the entire agreement." Halya's request for additional security was aimed at ensuring that she would receive the same level of support as if Troy remained working as a dentist at the same salary he made in 2004 for the remainder of the five-year period provided for in the settlement agreement.

Troy opposed Halya's motion for additional security, arguing that nothing in the settlement agreement required him to remain employed as a dentist or to pay to Halya thirty-five percent of a hypothetical dentist's salary for five years. Troy further argued that if the superior court were to modify this aspect of the parties' agreement, "in all fairness, the entire agreement for those issues should be set aside and ... the issue of spousal support (if any) and property settlement [should] be

litigated with all the property, debts, and payments made to date being considered and accounted for."

After a hearing on the motion to enforce the agreement and consideration of supplemental briefing on the meaning of the paragraph of the settlement agreement governing spousal support, the superior court determined "that the reasonable expectation of the parties at the time of entering into the agreement was that Troy's spousal support to Halya would be based on his dental income for a five-year minimum period."

## III. STANDARD OF REVIEW

 "We apply basic contract interpretation principles to the interpretation of a property division agreement incorporated into a divorce decree." [1] We review the interpretation of a contract de novo, with any inferences that the superior court has drawn from extrinsic evidence being reviewed for "support[ ] by substantial evidence." [2]

## IV. DISCUSSION

 Troy claims that the superior court erred in its interpretation of the agreement and that its interpretation had the effect of modifying the agreement to such an extent that the property division and the support provisions must be relitigated. The superior court has the authority to interpret the agreement and determine the parties' reasonable expectations at the time of contract.[3] Our inquiry therefore focuses on the superior court's interpretation of the agreement.

Troy argues that the language of the settlement agreement is unambiguous and should have been enforced as written. Halya agrees that the language is unambiguous, but disagrees with Troy's interpretation. Halya additionally argues that even if this court finds ambiguity in the language, the reasonable expectations of the parties at the time of contract support her position.

The dispute in the case centers on paragraph 20 of the Settlement Agreement. Paragraph 20 provides in full:

Troy will pay [Halya] spousal support in monthly payments equal to 35% of his income from the prior calendar year (gross income as would be reflected on Section A of the Civil Rule 90.3 Child Support Guidelines Affidavit). The spousal support shall be reduced by the amount Troy is paying as child support during the minor children's minority. The spousal support shall be paid until Troy retires from dentistry, with a five-year minimum for said payments. Troy will maintain a disability insurance policy to insure he will have income in the event of disability. This spousal support provision is integral to the property settlement in this agreement. Halya's remarriage would not constitute grounds to modify the spousal support. The spousal support shall be paid commencing September 15, 2004, and on the fifteenth of each month thereafter.

Troy argues that the plain language of this provision merely requires him to pay thirty-five percent of his total income, whatever its source, and does not require that he remain a dentist or pay spousal support at a level commensurate with a dentist's income. Halya responds that this provision establishes that Troy must pay her spousal support based on a dentist's income for a minimum of five years.

Troy first argues that the term "income," as used in paragraph 20, includes income from any and all sources, but is not defined to require him to maintain his employment as a dentist. Troy further contends that the agreement contemplates that he may retire from dentistry and sell his practice. He points to paragraph 13 of the agreement, which provides that "[i]f Troy elects to sell his dental practice within 9 years of execution of this agreement, he will pay [Halya] 30% of the net proceeds from such sale." Troy also maintains that the agreement would be unconstitutional if it required him

1. *Williams v. Crawford*, 982 P.2d 250, 253 (Alaska 1999).

2. *Wahl v. Wahl*, 945 P.2d 1229, 1231 n. 2, 1232 n. 3 (Alaska 1997).

3. *Knutson v. Knutson*, 973 P.2d 596, 600 (Alaska 1999).

to remain a dentist for five years. But as Halya agreed at oral argument, Troy need not remain a dentist as long as he pays spousal support based on a percentage of imputed income based on his past earnings as a dentist.

Halya responds to Troy's arguments by focusing on the language of paragraph 20, noting the key passage that provides that "spousal support shall be paid until Troy retires from dentistry, with a five-year minimum for said payments." As Halya points out, the term "said payments" refers back to the spousal support payments based on Troy's income until he retires from dentistry. We agree with Halya that, read in context, this sentence indicates that payments based on an income from dentistry are required until Troy retires from dentistry but in any event for a minimum of five years.

Halya's position that Troy must pay spousal support based on a dentist's income for a minimum of five years is supported not only by the language of paragraph 20, but also by the extrinsic evidence presented to the trial court. Halya argues that viewed in the context of the entire property settlement and the parties' relative economic positions and earning power, an equal division of marital assets without significant spousal support would have been "unconscionable." Troy's income for 2003, for example, was over $380,000 while Halya's was less than $11,000. Halya was not employed at the time of divorce and was hoping to return to school to train as a dental hygienist. Under these circumstances, the property division would ordinarily have been weighted heavily in Halya's favor.[4] Halya also relies on paragraph 20's statement that "[t]his spousal support provision is integral to the property settlement in this agreement" to support her argument that the spousal support provision and the property division are interdependent, and that a large support payment was required to balance the relatively small distribution of marital assets to Halya.

Halya also explained that the five-year minimum period for significant spousal support served a specific purpose because the youngest child of the marriage will have turned eighteen by the end of the five-year period. According to Halya, the parties intended the spousal support to maintain a secure income for Halya while the children were still in the home as well as allow her to retrain to start a career. As Halya points out, paragraph 20 requires Troy to maintain disability insurance to ensure that he will continue to receive his dentist's income even if a disability prevented him from working as a dentist. The agreement's further requirement that Troy's life insurance policy be transferred to Halya to secure payment of spousal support also supports the agreement's fundamental assumption that Troy pay support in an amount equal to thirty-five percent of his dental income, whether or not he remains a dentist.

In light of the extrinsic evidence—particularly the equal division of marital assets despite the unequal earning power of the parties—the terms of the settlement agreement are not reasonably subject to differing interpretations. Troy has pointed to no extrinsic evidence supporting the likelihood that Halya would have agreed to an equal division of assets without receipt of substantial spousal support.[5] And if we were to accept Troy's argument that the provision adopting a "five-year minimum for said payments" of spousal support was not tied to his dental income, then Troy would be free to quit dentistry immediately, cease working for pay (as he presumably would have by going to medical school), and owe no further payments. In other words, Troy's interpretation of the agreement would leave him free to avoid the contract's express provision requiring at least five years of "payments." Because this interpretation would enable Troy to nullify a clearly expressed minimum payment requirement, it is reasonable to infer that the spous-

---

4. *See, e.g., Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987) ("When a couple has sufficient assets, the spouse with the smaller earning capacity can and should receive a larger share in the property division to aid him or her in the transition.").

5. Although paragraph 13 also provides that Halya will receive thirty percent of the proceeds of any sale of the dental practice within nine years, this does not conflict with paragraph 20.

al support was meant to refer to Troy's dental earnings and not just whatever income he might make, or not make, doing something else. As the superior court noted, the principles of good faith and fair dealing must be taken into consideration in the interpretation of contracts. Allowing Troy the unilateral power to reduce the support he owed would violate those principles, particularly in light of the balance struck in the property distribution between the parties.

We conclude that the agreement terms support the superior court's interpretation of the agreement. The extrinsic evidence presented by Halya supports a definition of the term "income" in paragraph 20 as an amount comparable to Troy's usual dentistry salary. Therefore, the superior court's conclusion that "Troy's spousal support to Halya would be based on his dental income for a five-year minimum period" is affirmed.[6]

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

6. Because we affirm the superior court's interpretation of the agreement, we need not address Troy's argument that the superior court's decision was an impermissible modification of the settlement agreement, requiring that the entire agreement be set aside and the property division and spousal support relitigated.