*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NEIL D. GUNN, | ) | |
| | ) | Supreme Court No. S-15648 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-10497 CI |
| v. | ) | |
| | ) | O P I N I O N |
| NONA S. GUNN, | ) | |
| | ) | No. 7080 - February 5, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Allison Mendel, Mendel & Associates, Inc., Anchorage, for Appellant. Richard W. Maki, David H. Shoup, and Amy E. Kropp, Tindall Bennett & Shoup, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A divorcing couple disputed the nature of their marital interest in a limited liability company. They eventually agreed that the husband would retain the ownership interest but the wife would receive 25% "of the net commission" from certain sales if they occurred within a limited time after the divorce. When a sale occurred the parties disagreed on how to define "net commission": the wife contended that it meant the

commission received by the company, but the husband contended that it meant only his share of it. The wife sought discovery in support of her interpretation of the agreement. The husband moved for a protective order, and the parties' attorneys compromised on some limited production. Although the husband produced information that appeared to satisfy the compromise, the wife filed a motion to compel. The court granted the motion to compel and awarded the wife attorney's fees for having had to file it. Then, following an evidentiary hearing, the superior court agreed with the wife's interpretation of the settlement agreement.

The husband appeals both the decision on the merits and the award of attorney's fees on the motion to compel. Because the language of the agreement and relevant extrinsic evidence favor the wife's interpretation of "net commission," we affirm the superior court's decision of that issue. But because we cannot see the rationale for the superior court's award of attorney's fees to the wife on her motion to compel, we remand that issue to the superior court for reconsideration.

## II. FACTS AND PROCEEDINGS

### A. The Property Agreement And The Post-Divorce Commission

Neil and Nona Gunn[1] were married in 2005. During the marriage, Neil and a company called Sun Consulting, LLC formed Venture North Group, LLC to broker mergers and acquisitions of other companies. Neil and Sun Consulting each held a 50% interest in Venture North. Neil worked part-time for the company during the marriage while also working for an unrelated corporation. Nona, a stay-at-home mother, also did some work for Venture North, though she was not named as a member on its company documents. At the time the parties separated in September 2009, Venture North had two

---

[1]     Nona's last name is now Wilson.

clients for which it was attempting to broker deals: Brice, Inc., a construction company, and Great Northern Engineering.

In 2010 Neil and Nona divorced and divided their property through what the superior court termed an "amicable settlement" incorporated into the court's findings of fact and conclusions of law. The agreement noted the parties' "disagree[ment] as to whether they jointly ha[d] accrued a 50% marital interest, or whether [Neil] alone ha[d] accrued a 50% interest in the business operations and potential profits of Venture Group North [sic], LLC." And while the parties agreed that "the efforts invested in the business through the date of separation [were] marital earnings," they disagreed on the extent of those efforts.

Nonetheless, Neil and Nona were able to agree on a division of the Venture North ownership interest. Neil would "retain sole ownership and control of" the interest. But if Venture North succeeded in selling either of its two clients, Brice and Great Northern, "on or prior to June 30, 2011, [Nona] shall be paid 25% of the net commission from each such sale and [Neil] shall ensure that such payment is timely made." If a sale occurred "on or after July 1, 2011 and before January 1, 2013, [Nona] shall be paid 20% of the net commission from each such sale." And for any sale after January 1, 2013, Nona would receive nothing. The agreement also required that Neil give Nona his personal tax returns and those for Venture North for the tax years 2010 through 2012.[2]

_____

[2]     The relevant portion of the agreement reads in full:

> [The superior court finds t]hat the parties disagree as to whether they jointly have accrued a 50% marital interest, or whether the husband alone has accrued a 50% interest in the business operations and potential profits of Venture Group North [sic], LLC, an Alaskan joint venture in concert with third parties. Regardless, the parties agree that the efforts

(continued...)

In July 2010 Venture North successfully brokered the sale of Brice and received a commission of $1,875,000. There is no dispute that Neil's membership interest entitled him to half this commission, and he wrote Nona a check for 25% of his half (that is, 12.5% of the commission earned by Venture North).[3] The check apparently contained a restrictive endorsement.[4]

---

[2](...continued)

> invested in the business through the date of separation are marital earnings. In connection with this specific asset, the parties have agreed that the Defendant husband shall retain sole ownership and control of said business interest, however characterized. He shall, however, report on the sales of any "existing client assets" or "existing clients" to the Plaintiff wife until December 31, 2012 and, for a period of three years (i.e. tax years 2010, 2011 and 2012) shall provide a true and accurate copy of the Venture North Group, LLC federal tax return to her as well. In the event of full or partial sale of one or both clients or assets of said existing clients on or prior to June 30, 2011, the Plaintiff wife shall be paid 25% of the net commission from each such sale and the Defendant husband shall ensure that such payment is timely made. In the event that a sale shall occur on or after July 1, 2011 and before January 1, 2013, the Plaintiff wife shall be paid 20% of the net commission from each such sale.

A footnote defined "existing client" to mean "any business or person who retained the services of Venture Group North, LLC on or before February 14, 2010." The entities meeting the definition were identified as Brice and Great Northern.

[3]  The parties have stipulated to the amounts due Nona under their differing arguments, and the amounts are therefore irrelevant to this appeal.

[4]  The record does not contain a copy of the check, but the parties appear to agree that it was tendered in full satisfaction of Neil's obligations under the settlement agreement.

Nona refused to accept the check; she contended that the agreement entitled her to 25% of Venture North's commission, not 25% of Neil's share of it. Neil provided another check without any restrictions, and Nona accepted it while continuing to maintain she was entitled to more. There followed several years' hiatus in the parties' communications on this issue; Nona then contacted Neil through her attorney in September 2013, reiterating her belief that Neil owed her 25% of Venture North's commission. She told Neil that unless he paid her the additional amount due she would commence discovery related to the dispute, then file a motion to enforce the parties' 2010 agreement. Neil responded that he had satisfied the agreement and that Nona had waived or abandoned any claim to the contrary.

## B. The Discovery Dispute And Attorney's Fees Award

In November 2013 Nona served Neil with interrogatories seeking information about the sale of Brice and the commission Venture North received from the sale; asked that Neil produce a broad set of documents; and gave notice of the deposition of Venture North's accountant. Neil responded that "[Nona] ha[d] no right to discovery because the case is closed, and she does not have a judgment on which she is seeking execution."

In December 2013 Neil moved for a protective order. Shortly thereafter Nona's attorney wrote Neil's attorney, stating that the discovery dispute could be resolved if Neil provided "documentation that would show (1) whether [Great Northern] was sold and the timing of such a sale, (2) the actual amount actually received by Venture North for the Brice sale, and when, and (3) [Neil's] tax returns for the other two years in question." But the discovery dispute remained unresolved, and Nona filed an opposition to the motion for protective order, as well as a motion to show cause why Neil should not be held in contempt for failing to respond to her discovery requests.

The parties' attorneys exchanged emails in January 2014. On January 14, Nona's attorney wrote that he " need[ed] Neil Gunn's personal tax returns for 2010, 2011 and 2012, documentation of the full amount of the commission on the Brice sale, [and] documentation showing there was no sale of the second company during the relevant time period." He continued: "I am agreeing that if you will produce the things listed herein, we will review the materials and determine whether we need anything else. . . . If I do not receive these materials shortly, I will be forced to file a motion to compel." Neil's attorney responded the next day that she would "forward [the documents] . . . this week," to which Nona's attorney immediately replied, "Thank you for agreeing to send the documents this week." (Emphasis in original.)

Two days later Neil's attorney hand-delivered to Nona's attorney the following documents: (1) Neil's 2011 and 2012 tax returns;[5] (2) a "Brice letter dated 12.18.13"; and (3) a "Great Northern Engineering Biennial Report." Neil's later notice to the court described the "Brice letter" as "stating the total commission Venture North Group, LLC received upon successful brokerage of Brice's sale," and the Great Northern biennial report as "showing no change in the company's ownership."

Without further communication between the parties on the subject, Nona filed a motion to compel discovery on February 4. The motion asserted that Neil had failed to provide documentation of the sale of Brice, the non-sale of Great Northern, or any commissions paid; had not provided responses to interrogatories; and had "provided only partial responses" to Nona's other discovery requests. The motion also asserted that Nona's counsel had "undertaken reasonable efforts to meet and confer with opposing counsel to obtain without court intervention the requested documentation of the sales and

---

[5] Venture North's returns for the three years at issue, and Neil's personal return for 2010, had already been produced.

commissions for Brice, Inc. and Great Northern Engineering." In opposition, Neil explained that the parties had discussed whether a more limited production would satisfy Nona's demands; that his counsel had produced some responsive documents in hopes of furthering this discussion; and that Nona had made no objection to the adequacy of the materials produced, leading Neil to believe that the limited production was sufficient. The superior court granted Nona's motion to compel and awarded Nona "reasonable attorney's fees incurred by plaintiff in litigating the motion to compel."[6] On the same day, the court denied Neil's motion for a protective order.

### C. The Evidentiary Hearing And Decision

In May 2014 the superior court held an evidentiary hearing to determine how much of the commission from the Brice sale was due Nona under the settlement agreement. The court heard argument from counsel as well as testimony from Nona and Neil about their respective roles in Venture North. In a written decision, the superior court concluded that Nona was entitled to 25% of the net commission paid to Venture North rather than 25% of Neil's half of that commission. In support of this decision the court cited the language of the agreement, a discussion between counsel and the court at the time the agreement was put on the record in 2010, and the parties' circumstances at the time. The court observed that Nona could have been awarded 25% of the company if the case had gone to trial; her agreement instead to stepped-down percentages of sales made within three years of the divorce, with the attendant risk that she would receive nothing if no sales occurred, supported her claim to the higher amount.

---

[6]     Neil moved for reconsideration, which was denied. A later order specified the amount of fees awarded.

Neil appeals. He challenges the superior court's interpretation of the settlement agreement and its decisions to grant Nona's motion to compel and to award her attorney's fees on the motion.

## III.   STANDARDS OF REVIEW

"Contract principles govern the interpretation of property settlement agreements incorporated in dissolution decrees."[7] The proper meaning of a contract is a legal question.[8] We interpret a contract de novo; "[w]here the superior court considers extrinsic evidence in interpreting contract terms, however, we will review the superior court's factual determinations for clear error and inferences drawn from that extrinsic evidence for support by substantial evidence."[9]

"We review discovery rulings and awards of attorney's fees for abuse of discretion."[10] "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[11]

## IV.   DISCUSSION

### A.    The Superior Court's Interpretation Of The Settlement Agreement Was Not Erroneous.

Neil argues that the superior court erred in deciding that Nona was entitled to 25% of Venture North's commission from the Brice sale rather than 25% of Neil's

---

[7]      *Mahan v. Mahan*, 347 P.3d 91, 94 (Alaska 2015) (quoting *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012)).

[8]      *Rockstad v. Erikson*, 113 P.3d 1215, 1222 (Alaska 2005).

[9]      *Mahan,* 347 P.3d at 94 (quoting *Villars*, 277 P.3d at 768).

[10]      *Kestner v. Clark*, 182 P.3d 1117, 1121-22 (Alaska 2008) (internal citations omitted).

[11]      *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009)).

50% interest in that commission. We conclude that the superior court correctly interpreted the parties' agreement.

### 1. The text and structure of the agreement support Nona's interpretation.

When interpreting a contract, a court "begin[s] by viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms, in order to determine if those terms are ambiguous — that is, if they are reasonably subject to differing interpretation[s]."[12] Here, the relevant sentence of the parties' agreement states that "[i]n the event of a full or partial sale of one or both clients or assets of said existing clients on or prior to June 30, 2011, [Nona Gunn] shall be paid 25% of the net commission from each such sale." The simple phrasing favors Nona's argument: it is Venture North that would receive a "commission," whereas its members would receive portions of that commission. As the superior court noted at the evidentiary hearing, the agreement "doesn't say the net commission received by Neil Gunn [from] each sale. It says 'the net commission.' "

Of course, the "interpretation of a contract term does not take place in a vacuum, but rather requires consideration of the provision and agreement as a whole."[13] Neil argues that the structure of paragraph 14 supports his position because it frames the issue as the parties' disagreement "as to whether they have jointly accrued a 50% marital interest, or whether the husband alone has accrued a 50% interest" in Venture North, then states that the parties have reached agreement "[i]n connection with this specific asset." He argues that Nona's "25% of the net commission from each such sale" is

---

[12]     *Tesoro Alaska Co. v. Union Oil Co. of Cal.*, 305 P.3d 329, 333 (Alaska 2013) (alteration in original) (quoting *Hartley v. Hartley*, 205 P.3d 342, 347 (Alaska 2009)).

[13]     *Mahan*, 347 P.3d at 95.

therefore correctly framed in terms of the marital asset under discussion — his 50% of Venture North — rather than Venture North's commission. But there is nothing inconsistent in defining the marital asset as half the business, then valuing Nona's interest in that asset by reference to something else — here, a share of the commissions received by the business during a specified period of time.

>   **2.   The superior court's factual findings are not clearly erroneous, and the inferences it drew from those findings are supported by substantial evidence.**

The superior court also considered extrinsic evidence in reaching its decision. "Where the superior court considers extrinsic evidence in interpreting contract terms, . . . we will review the superior court's . . . inferences drawn from that extrinsic evidence for support by substantial evidence,"[14] which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

>   **a.   Nona's interest in Venture North**

The superior court found that Nona could have been awarded half the marital interest in Venture North (that is, 25% of the company) at trial, and that "[i]f this had occurred she would have been entitled to her 25% share for as long as Venture North earned commissions."[16] Instead, Nona agreed to a gradual step-down of her interest in

---

[14]   *Mahan*, 347 P.3d at 94 (quoting *Villars*, 277 P.3d at 768).

[15]   *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1089 (Alaska 2008) (quoting *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000)) (internal quotation marks omitted).

[16]   Neil agreed at the evidentiary hearing and in his arguments to this court that, had the case gone to trial, Nona could have received half of the marital 50% membership interest in Venture North. Venture North is a limited liability company, and interests in limited liability companies are personal property, AS 10.50.370, which may be assigned "in whole or in part." AS 10.50.375(a). While Neil's counsel contended at
(continued...)

the company, "reducing [her claim for commissions] from 25% to 20% after 18 months and to zero after three years." By doing so she "took the risk that she might not receive any commission received by Venture North from a sale of an 'existing client.' " According to the superior court, these circumstances — Nona's waiver of a claim that could have been much more valuable in the long run — supported her interpretation of the agreement: that she settled for a chance at a larger share if the commissions were quick to materialize. Neil argues that the superior court erred by taking into account the possibility that Nona would have a continuing interest in the company because his membership interest in Venture North was separately valued at $1,500 and assigned to him by agreement; he contends that the provisions at issue must therefore be interpreted as discussing only the value of future commissions, not the value of the marital interest in the company.

But the parties' agreement was specifically premised on their failure to agree on "whether the husband alone has accrued a 50% interest in the business operations *and* potential profits of Venture Group North." (Emphasis added.) We see no reason why they could not agree to assign different values, or different methods of determining value, to "potential profits" on the one hand and every other aspect of "business operations" on the other; this appears to be what they did.

Neil also argues that, because the superior court found that more than 50% of the work on the Brice sale was done after separation, the parties must have intended that Nona receive less than half of Neil's share of the commission. He analogizes to "active appreciation" — in which separate property's increase in value during the

---

**16**(...continued)
oral argument that the LLC's operating agreement may have affected Neil's ability to assign half his share to Nona, there is no evidence of that in the record.

marriage can itself become marital property[17] — and argues that this case is one of "active depreciation," in which work occurring after separation needs to be subtracted from the value of the marital asset before it is divided.

To support this argument Neil cites *Young v. Kelly*.[18] In that case, a husband and wife worked together on a fishing boat.[19] Eight years after they divorced, the federal government created the individual fishing quota (IFQ) program, and the husband received quota shares based on his five highest "landing" years, one of which had been during the marriage.[20] The wife argued that because a marital year had been used to determine the IFQ shares' value, a portion of the shares must be marital property.[21] We held, however, that the wife had no marital interest in the IFQ shares because "[t]he 'real value' at issue . . . [was] the value [the wife's] work added to the value of the IFQ shares[, and] that value was not created until the IFQ program came into existence, eight years after the marriage ended."[22] *Young* is inapposite: while the IFQ program did not yet exist when the marriage in *Young* ended, it is undisputed that Venture North was a marital asset acquired during Neil and Nona's marriage, and the only question was how that marital asset should be valued. In answering that question, the parties could reasonably rely on anticipated commissions.

---

[17] *See, e.g.*, *Harrower v. Harrower*, 71 P.3d 854, 857-58 (Alaska 2003) ("Active appreciation occurs when marital funds or marital efforts cause a spouse's separate property to increase in value during the marriage.").

[18] 334 P.3d 153 (Alaska 2014).

[19] *Id.* at 154.

[20] *Id.*

[21] *Id.* at 155-56.

[22] *Id.* at 160.

We conclude that the superior court did not clearly err when it found that the parties intended Nona to give up a continuing interest in Venture North in exchange for a 25% share of the commissions received from certain sales within a limited time frame.

### b.     Neil's lack of control over Venture North's commission

Neil also argues that the superior court, in finding Nona entitled to 25% of Venture North's commission, failed to consider that Neil did not control the company, and that his share of the commission could have been reduced during the period covered by the agreement by the addition of new members to the LLC.  He contends that under Nona's interpretation he could be forced to pay her 25% of a commission under circumstances in which he was entitled to receive less than 50% of it himself, whereas if Nona's entitlement was based on his share only, he could carry out the agreement (giving Nona 25% of his share) regardless of how Venture North's commission was distributed among the members.

This theoretical argument is unconvincing, as it ignores the "goals sought to be accomplished[] and surrounding circumstances when the contract was negotiated."[23]  Although it is possible that Neil could have received less than 50% of the commission from the Brice sale if circumstances had changed, that has no bearing on the case before us.  Nowhere in the record is there any evidence that the parties considered the possibility of a reduction in Neil's membership interest or its effect on his share of a commission.  Even if the parties had considered such a scenario, the fact that Neil might receive a smaller share of Venture North's commission would not have prevented

---

[23]     *Zamarello v. Reges*, 321 P.3d 387, 393 (Alaska 2014) (quoting *Miller v. Handle Constr. Co.*, 255 P.3d 984, 988-89 (Alaska 2011)) (internal quotation marks omitted).

him from promising to pay Nona an amount based on the full commission that arguably reflected what she was owed at the time of the divorce.[24]

### c.     The structure of the LLC for tax purposes

The parties' agreement requires Neil to "provide a true and accurate copy of the Venture North Group, LLC federal tax return" to Nona.  The superior court noted that both parties relied on this provision as supporting their interpretation of the agreement, but the court concluded that the provision was not "helpful in determining the reasonable expectations of the parties as to the amount of commission Nona was to receive."  Instead, the court found that the "evidence suggest[ed] an intent that neither party disputes; i.e., that the percentage Nona was to receive was to be based on the <u>net</u> commission after taxes rather than the gross commission received by Venture North." (Emphasis in original.)

Neil contends, however, that Venture North's structure for tax purposes supports his position.  He explains that Venture North, as an LLC,  is a pass-through entity that does not pay income taxes; instead, its members are taxed personally on distributions from the company.  Neil argues that if Nona's share were to be calculated on Venture North's commission, determining the "net commission" would require determining the individual tax rates of each member — a task that would be practically difficult given that the other members were not parties to the divorce action.  Therefore, he argues, Nona's interpretation cannot reflect the parties' intent, and "[t]he only

---

[24]     *See Burns v. Burns*, 157 P.3d 1037, 1039-40 (Alaska 2007) ("[The husband] also maintains that the agreement would be unconstitutional if it required him to remain a dentist for five years.  But as [the wife] agreed at oral argument, [the husband] need not remain a dentist as long as he pays spousal support based on a percentage of imputed income based on his past earnings as a dentist.").

reasonable way to interpret 'commission' is . . . that it refers to the commission Neil receives through his fifty percent interest in Venture North Group."

The parties did not further define the term "net commission" in their agreement. Nona contends that the net commission received by the company — what she argues was the basis of the agreement — is not affected by the tax liabilities of members, paid individually on their distributed shares. She posits that the term "net commission" could reflect deductions other than taxes, such as "expenses incurred to earn the commission." She further argues that the LLC's tax structure supports her claim to a larger share; if the parties had agreed that the amount due Nona would be based on Neil's share of the commission alone, his individual tax returns would have been all she needed to verify this information, making the mandated disclosure of Venture North's returns unnecessary. We find Nona's arguments persuasive, and we conclude that the superior court did not err in deciding that the LLC's tax structure did not support Neil's position.

### d. The parties' statements when placing the agreement on the record

The superior court also relied on a discussion of the settlement in 2010 when the parties placed their agreement on the record, finding that it supported Nona's position. The court noted in particular the statement of Nona's counsel that the agreement would entitle his client to "25% of the 'net after-tax commission received from that sale or sales,' " not limiting it to the amount of the commission received by Neil. Neil claims that the superior court's inference is not supported by the full discussion, in which Nona's counsel also said that she had "discounted essentially what she would be taking from *any* eventual sale." (Emphasis appellant's.) He contends that Nona's share would not be "discounted" (from the presumptive 50/50 sharing of the

marital asset) unless she took less than he did, meaning that she must have agreed to take 25% of Neil's 50% interest rather than 25% of Venture North's commission.

Neil is correct that, because he and Nona were entitled to equal shares of the Brice commission if it was earned before July 1, 2011, Nona's interest was not "discounted" during that time. But we disagree that the full discussion supports Neil's interpretation. After saying that Nona "ha[d] discounted essentially what she would be taking from any eventual sale," her counsel went on to describe that discount in terms of the step-down provisions: from 25% to 20% to zero over the course of three years. Her counsel summed up: "So there's a break in here as far as a discount for additional work that might have to be done. The parties cannot guarantee and there is no guarantee that there will be any proceeds whatsoever."

This language supports the superior court's findings about the parties' intent. As reasonably read, Nona's counsel's remarks identified the "discount" as Nona's willingness to forgo any continuing interest in Venture North and to assume the risk that she would receive a smaller percentage of any commission as time went by and, ultimately, no commission at all if sales did not materialize in the three years after divorce (as in fact happened with regard to Great Northern). To the extent the superior court relied on the discussion in 2010 as supporting Nona's interpretation of the agreement, it did not clearly err.

### 3. The superior court did not err in interpreting the settlement agreement

"Because the superior court's . . . inferences drawn from extrinsic evidence are otherwise supported by substantial evidence, and because the plain text of the [settlement] agreement supports the superior court's interpretation,"[25] the superior court

---

[25]     *Mahan v. Mahan*, 347 P.3d 91, 97 (Alaska 2015).

did not err in finding that the agreement entitles Nona to 25% of the net commission received by Venture North from the Brice sale. We affirm the superior court's decision of this issue.

**B. We Remand The Award Of Attorney's Fees For A Determination Whether Neil's Position In Discovery Was Substantially Justified.**

Neil contends that the superior court abused its discretion when it awarded Nona attorney's fees for having to bring a motion to compel discovery.[26] Neil argues that the parties agreed to a more limited production than what Nona initially demanded; that he provided information he reasonably believed would satisfy their agreement; and that Nona filed her motion to compel without informing him first that the discovery he provided was insufficient. Nona responds that the award of attorney's fees was proper because Neil's disclosures were deficient and he provided more information only after she filed her motion to compel.

Alaska Rule of Civil Procedure 37(a)(4)(A) provides that, if a motion to compel is granted or discovery is provided after the motion is filed, "the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees." The rule also provides, however, that an award of fees is not appropriate if "the opposing party's nondisclosure, response or

---

[26] Neil also argues that it was error to grant the motion to compel, but he does not identify any prejudice other than the award of fees. Even if it was error to grant the motion, the error would be harmless absent the fee award. *See Peterson v. Swarthout*, 214 P.3d 332, 342-43 (Alaska 2009) ("[The wife] argues that Judge Cutler should not have granted [the husband's] motion to compel. . . . [B]ut this mistake did not prejudice [the wife] . . . . Granting the motion was harmless error."). We therefore address only the fees issue.

-17- **7080**

objection was substantially justified."[27] We have not explicitly addressed substantial justification under Civil Rule 37(a)(4), but the United States Supreme Court, discussing the analogous federal rule, has held that an action is substantially justified "if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].' "[28]

The factual background for the superior court's award of fees in this case appears to be undisputed. Nona served her discovery requests in November 2013. Although Neil's initial position was that she was not entitled to discovery, and although he filed a motion for a protective order on that ground in early December, the parties nonetheless communicated about whether some limited production would be sufficient to resolve the dispute. In their initial exchange on the subject, Nona's attorney stated that he saw "cooperation on these issues as a possibility" and that the discovery dispute could be resolved if Neil would "provide documentation that would show (1) whether the other business [Great Northern] was sold and the timing of such a sale, (2) the actual amount actually received by Venture North for the Brice sale, and when, and (3) [Neil's] tax returns for the other two years in question." The attorneys' follow-up email exchange in January 2014 confirmed this limited production as the basis of the parties' agreement. Nona's attorney concluded, "I am agreeing that if you will produce the things listed

---

[27] Alaska R. Civ. P. 37(a)(4)(A).

[28] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (alteration in original) (citations omitted) (quoting Fed. R. Civ. P. 37(a)(4) advisory committee's note to 1970 amendment; *Reygo Pac. Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982)). Stated another way, "[m]aking a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2288 (3d ed. 2002).

herein, we will review the materials and determine whether we need anything else. . . . *If I do not receive these materials shortly*, I will be forced to file a motion to compel." (Emphasis added.) Within a few days Neil's counsel hand-delivered materials ostensibly responsive to Nona's compromise demands: Neil's tax returns for 2011 and 2012, a letter on Brice letterhead stating the amount of Venture North's commission, and a Great Northern biennial report reflecting that the company had not changed ownership. In early February, however, with no more correspondence about discovery in the interim, Nona filed her motion to compel.[29]

On these facts, it is difficult to see why Neil's position was not "substantially justified" for purposes of avoiding an award of fees under Civil Rule 37(a)(4)(A).[30] The documents Neil provided appeared to satisfy the general requirements repeatedly specified in the parties' efforts toward compromise. Nona's attorney, in his final substantive communication about the matter, stated that he would "review the materials and determine whether [he] need[ed] anything else" and that "if [he did] not receive these materials shortly," he would file a motion to compel, implying that he

---

[29] Nona's counsel represented at oral argument that before the motion to compel was filed the parties discussed alleged continuing deficiencies in Neil's disclosures at one or more status hearings, but the record does not show any hearings occurring between Nona's filing of her discovery requests and the superior court's grant of the motion to compel.

[30] At oral argument Nona's attorney argued that the award of fees was justified because Neil had failed to provide documentation of the total price of the Brice sale. Although Neil did not provide this information, there is no indication that Nona reasonably expected it; when the attorneys discussed compromising the discovery dispute, Nona asked for information about "the actual amount actually received by Venture North for the Brice sale, and when," later phrased as "the full amount of the commission on the Brice sale," information Neil provided. The full price of the Brice sale was not a part of Nona's demands.

would not file the motion without first advising Neil of a deficiency and giving him the opportunity to correct it.

The superior court did not explain its decision to award fees to Nona, and we cannot discern its rationale from the record. We remand the issue to the superior court for an express determination whether Neil's position in discovery was substantially justified. If upon reconsideration the superior court concludes that Neil's position was substantially justified, it has the discretion to modify its decision. We retain jurisdiction on this issue.

## V.     CONCLUSION

The superior court's decision that Nona is entitled to 25% of Venture North's commission on the Brice sale is AFFIRMED. The issue of attorney's fees on the motion to compel is remanded for further proceedings consistent with this opinion, and we retain jurisdiction.